**MEADE CONSTRUCTION COMPANY, INC., Movant,**

v.

**MANSFIELD COMMERCIAL ELECTRIC, INC., Respondent.**

Supreme Court of Kentucky.

Feb. 27, 1979.

Rehearing Denied May 1, 1979.

Carl D. Edwards, Jr., William H. Jones, Jr., Vanantwerp, Hughes, Monge & Jones, Ashland, for movant.

Max Picklesimer, Johnson, Dunnigan & Martin, Ashland, for respondent.

AKER, Justice.

Meade Construction Company, Inc., seeks review of a decision of the Court of Appeals affirming a judgment of the Boyd Circuit Court which dismissed Meade's complaint against Mansfield Commercial Electric, Inc. We reverse and remand.

Meade, a general contractor, successfully bid for the construction of the Fairfield Stadium press box at Marshall University in West Virginia. In preparing its bid on the stadium job, Meade solicited bids from various contractors on different aspects of the work. Mansfield submitted the apparent low electrical subcontractor's bid in which Mansfield agreed to furnish materials and perform all electrical work on the project for $11,500.00. Mansfield's initial bid was submitted to Meade by telephone. Subsequent to this bid and prior to Meade's submitting the ultimate contract bid, Meade called Mansfield to ask why its bid was substantially lower than the other bids received by Meade. Mansfield at that time reaffirmed its bid. The day after Meade submitted its contract bid for the job, Mansfield again verified its bid of $11,500.00 in a letter to Meade.

Meade was subsequently awarded the press box contract. Upon Meade's request to Mansfield that it execute a written contract and start work, Mansfield notified Meade that it was not going to do the job because Mansfield had not been paid in full for work previously done for Meade. The record is silent as to why Meade had not paid Mansfield. Mansfield was subsequently paid for work performed under the previous contract, but again refused to perform the electrical work. Without soliciting new bids, Meades then contracted with the second lowest subcontract bidder from the initial solicitation of bids to perform the work for $19,812.00.

Meade filed an action against Mansfield seeking to recover the $8,312.00 difference between the respondent's bid and the amount paid to the subcontractor which actually performed the work. After presentation of evidence by both parties, the trial court dismissed the complaint. The Court of Appeals affirmed.

It is without question that a written contract was never signed by Mansfield. Meade contends that Mansfield is liable despite the absence of a written agreement, under the theory of promissory estoppel. The doctrine of promissory estoppel provides as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." Restatement (Second), Contracts, § 90 (Tent. Draft No. 2, 1965).

We need not decide whether the doctrine of promissory estoppel applies in this state or whether, if so, it governs this case. Suffice it to say that under any conception of fairness and equity, one who submits a quotation for the purpose of its being used in the computation of a bid for a contract should be bound, when the contract is awarded pursuant to a bid prepared in reasonably foreseeable reliance on that quotation, to accept an agreement in conformity with the quotation. Mansfield submitted a clear quotation which was reiterated both orally and in writing. Mansfield should reasonably have expected that quotation to be used in the preparation of the contract bid, since it had notice that its subcontract bid was substantially lower

than the other bids received by Meade. Although the trial judge did not make a specific finding on the question of reliance by Meade, we feel the weight of the evidence clearly compels a finding that Meade did rely upon Mansfield's offer. Therefore, we hold Mansfield liable to Meade for damages caused by Mansfield's refusal to honor its subcontract bid.

■ Mansfield's refusal to perform the electrical work was not justified by Meade's slowness in paying Mansfield on a previous contract. If Mansfield operated in fear of non-payment it should never have submitted its subcontract bid initially. Non-payment under these circumstances is not a legal defense.

■ Mansfield argues that Meade should have resolicited bids on the electrical work once it became apparent that Mansfield was not going to do the job. Due to the time factor involved and the closeness in price range of the other bids, we feel that Meade's action was reasonable under the circumstances. Where Meade was faced with the duty to mitigate damages on the one hand and the possibility of its liability for liquidated damages for failure to complete the work under the contract by a specific date on the other, Meade's failure to request additional bids does not appear unreasonable.

Discussion of other questions raised by Meade is obviated by the conclusions reached herein.

The decision of the Court of Appeals and judgment of the trial court are reversed and this case is remanded to the trial court for entry of judgment consistent with this opinion.

All concur.