**LICHTEFELD–MASSARO, INC., Appellant,**

v.

**R.J. MANTEUFFEL COMPANY, INC., Appellee.**

**No. 90–CA–0318–MR.**

Court of Appeals of Kentucky.

April 5, 1991.

Robert J. Schumacher, Louisville, for appellant.

Susan S. Wettle, Brown, Todd & Heyburn, Louisville, for appellee.

Before HAYES, HOWARD and MILLER, JJ.

MILLER, Judge.

Lichtefeld–Massaro, Inc. (LMI), appeals from a judgment of the Oldham Circuit Court entered upon findings of fact and conclusions by the court.

The facts are these: In 1987, the Oldham County Board of Education (board of education) invited bids for the construction of two school buildings. The bids were to be opened by the board of education on May 14, 1987, at 10:00 a.m.

LMI elected to bid on the project. As such, it solicited bids from subcontractors for various aspects of the construction. R.J. Manteuffel Company (RJM) was one of approximately 250–300 subcontractors which submitted bids to LMI. RJM submitted a bid to do the roof construction work involved in the project.

Bruce Scales, vice president of sales for RJM, prepared the bid. The architect's specification for the roof construction called for one of two manufacturers of roof membrane to be used—Trocal or Sarnafil. In addition, fiberglass insulation was specified for use. Scales testified that when using Trocal or Sarnafil, the preferred insulation material was isocyanurate rather than fiberglass. Scales also testified that he attempted to contact the project architect, Lewis & Henry, but his phone calls were not returned. In spite of this, Scales prepared RJM's bid with the qualification

that it was based on isocyanurate insulation.[1]

LMI began accepting bids on May 13, 1987. RJM's bid was received that afternoon. As Scales was out of the office, James Michael Cahill, an estimator for RJM, telephoned the bid to LMI. He testified that he used Scales's handwritten summary, including the substitution of isocyanurate insulation, when phoning in the bid. He further stated that to the best of his knowledge, he did not deviate from Scales's summary.

Fred Hennies, Director for Estimating for LMI, said that he personally took RJM's bid and disputes that they were told that isocyanurate insulation was to be substituted for fiberglass. He contends that RJM's bid was accepted without substitution and was incorporated into LMI's master bid. LMI was awarded the contract.

On May 18, 1987, LMI received RJM's written bid confirmation, dated May 14, 1987. The bid specified that isocyanurate would be installed. LMI claims this was not sufficient to alert them of the substitution. LMI asserts that three or four weeks after it accepted RJM's bid, it first became aware of the substitution of materials. It is undisputed that at this time LMI and RJM attempted to get approval from the architect and the board of education to approve RJM's substitution of insulation. The substitution was denied. The denial was predicated upon the custom and practice in the industry that substitution of material must be approved in writing by the job architect before, not after, the bid letting. LMI demanded that RJM perform the subcontract according to bid specifications. RJM refused. Subsequently, LMI entered into a roofing subcontract with Triangle Industries and brought this damage suit against RJM.[2]

The trial court held that LMI's use of RJM's bid in preparing its own bid on the school project did not create a contract and, therefore, RJM was not liable for the addi-

---

1. It appears generally accepted in the contracting business that before substituting material, one must obtain written approval from the architect.

2. It is unclear from the record whether Triangle Industries was the second lowest bid.

tional cost of securing a replacement contractor.

LMI asserts liability is created by the doctrine of promissory estoppel. The Court's decision was based upon *Finney Co., Inc. v. Monarch Const. Co., Inc.,* Ky., 670 S.W.2d 857 (1984), wherein it was held that no contractual relationship is created between the subcontractor and the general contractor, even though the subcontractor's bid is used as a part of the general, overall bid and accepted by the awarding authority. In that case, the Court permitted Monarch (the general contractor) to reject Finney's bid which it had used in obtaining the general contract and institute in lieu thereof a lower bidder. In reaching its decision, the majority, over a strong dissent by Chief Justice Stephens, was faced with distinguishing the cases of *Meade Const. Co. v. Mansfield Commercial Elec., Inc.,* Ky. 579 S.W.2d 105 (1979), and *Harry Harris, Inc. v. Quality Const. Co. of Benton, Ky.,* Ky.App., 593 S.W.2d 872 (1979).

In *Meade,* Mansfield (an electrical subcontractor) submitted a bid. Meade (the general contractor) called Mansfield and asked why the latter's bid was substantially lower than other bids received. Mansfield reaffirmed its bid. After Meade had used the Mansfield bid as part of its overall bid in obtaining a contract for the project, Mansfield notified Meade that it was not going to perform according to its bid because it had not been paid in full for work previously done by Meade. In the ensuing suit, the Court held Mansfield bound to its bid. The decision appears to have been based upon the doctrine of promissory estoppel. That doctrine, as outlined in the *Restatement (Second) of Contracts* § 90(1) (1979), provides as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

In *Harry Harris, Inc.,* 593 S.W.2d at 872, Harris (the subcontractor) inadvertently failed to include certain kitchen equipment items within its bid. Quality Construction Company used Harris's bid in becoming the successful bidder on an elementary school project. After learning of the mistake, Harris declined to fulfill the commitment of its bid. In a resulting suit, the Court ruled in Quality's favor, again predicated upon Section 90(1) of the *Restatement.*

▮ The majority opinion in *Finney,* 670 S.W.2d at 860, distinguished both *Meade* and *Harris* by stating that they "were founded in equity, not contract." This distinction may be somewhat wanting. We view equity as a system of jurisprudence, not a field of law, as, for example, contracts or torts. Equitable principles may well be applied in all fields of law. A better distinction of *Meade* and *Harris* might have been made without doing damage to the *Finney* rule that the mere use of a subcontractor's bid by the general contractor in preparing the latter's successful bid does not create a contractual relationship between the entities. It seems to us that the distinction of *Meade* and *Harris* could have been predicated upon a rule that when, for some reason, a subcontractor, in submitting his bid, comes within the precepts of the promissory estoppel rule established in Section 90(1) of the *Restatement,* he may be bound to performance or suffer damages for breach. Since *Finney* did not overrule *Meade* and *Harris,* we must reconcile the cases. In so doing, we conclude, as did the trial court, that the use of RJM's bid by LMI in preparing the latter's successful bid on the school project did not alone create a contractual relationship between the parties. However, if the court should find that the conduct of RJM was sufficient to invoke the rule of promissory estoppel, as enunciated in *Meade, Harris,* and the *Restatement,* LMI is correct in holding RJM liable. We note the trial court made no finding on this issue, quite obviously because the opinion was based upon *Finney* alone and such a finding was deemed unnecessary. We therefore think

it necessary for the trial court to render a finding as to whether RJM, in fact, communicated a "qualified" bid to LMI and, if so, whether in so doing the same reasonably induced action by the latter. Only after these findings do we think an appropriate judgment can be entered under the authorities herein mentioned.

For the foregoing reasons, the judgment of the circuit court is reversed, and this cause is remanded for proceedings consistent with this opinion.

All concur.