AS MODIFIED: NOVEMBER 2, 2009
RENDERED: AUGUST 27, 2009
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2007-SC-000296-DG

BARBARA LUCINDA SAWYER        APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.        CASE NO. 2006-CA-000697-MR
FAYETTE CIRCUIT COURT NO. 2003-CI-01679

MELBOURNE MILLS, JR.        APPELLEE

## OPINION OF THE COURT BY JUSTICE NOBLE

## AFFIRMING

Appellant Barbara Lucinda Sawyer appeals a decision affirming the circuit court's judgment notwithstanding the verdict ("JNOV") in favor of Appellee Melbourne Mills, Jr., in a dispute over the validity of an alleged oral agreement. Because the oral agreement violated the Statute of Frauds, lacked consideration, and could not have induced Sawyer's action, it was unenforceable, and the decision of the Court of Appeals is affirmed.

## I. Background

Mills met Appellant Sawyer and her husband in 1991. In 1994, Sawyer requested that Mills become involved in already-pending class action litigation involving breast implants, and she solicited some women she knew as clients. Mills promised to give her a bonus if he ever had a big "payday" with one of his class actions, and she continued to research potential products liability claims.

Between 1994 and 2001, she assisted Mills in marketing his law practice, researching potential class action lawsuits, and in performing work as a contract employee for relatively brief periods of time, for which she was paid. Her employment ended on March 31, 2002.

In 1997, the prescription drugs Fenfluramine and Phentermine (commonly known as "Fen-Phen") were receiving national media attention due to the possibility they were causing heart valve damage. Sawyer claims that she recommended Mills pursue a class action against Fen-Phen's manufacturer, and the drugs were recalled soon after Mills began to advertise for Fen-Phen clients. Mills received an overwhelming response from his advertising campaign and ultimately had about 2600 clients (about 400 of whom were from Kentucky) that he signed up on a contingency fee basis. Sawyer assisted with clerical work in processing the claims.

On May 1, 2001, a settlement for millions of dollars was reached between Fen-Phen's manufacturer and Mills's clients. After receiving his initial portion of the substantial attorney's fees on June 20, 2001, Mills made bonus payments to all of his employees. Six long-term employees received a $100,000 bonus, one paralegal who Mills thought was instrumental to the Fen-Phen litigation's success received more than a $1,000,000 bonus, and an attorney received an initial $1,000,000 bonus (and a more substantial additional bonus later). Hourly employees such as Sawyer received a bonus equal to two weeks' wages. Sawyer's bonus was $1,300. Over the years, Mills had mentioned to Sawyer that he would reward her with a large bonus when he hit a "payday" in

the class action cases, and the Sawyers were disappointed in the $1,300 bonus.[1]

On June 25, 2001, the Sawyers invited Mills to their art studio and secretly tape-recorded their conversation. Mills admitted that the voices on the recording were his and the Sawyers'. Sawyer and her husband suggested to Mills that he pay her a substantial bonus due to her encouragement of Mills to pursue class actions. After a lengthy discussion, the Sawyers suggested that Mills pay Sawyer a $1,065,000 bonus, consisting of $1,000,000 plus the value of a luxury car ($65,000), and Mills agreed. Mills discussed how and when the payments would be made.

Mills refused to make a lump sum payment even though he had the financial ability to do so; instead he agreed to make the payments in installments of $10,000 per month. They would also be hidden from his office employees (Sawyer claimed Mills did not wish to make the other employees jealous).[2] Mills also agreed to pay for an attorney to draft a written agreement to memorialize their understanding, and he spoke to the Sawyers' attorney,

---

[1] Previously, Sawyer was paid more than $150,000 through an advertising agency set up by her and through which the Mills Law Office placed its advertising. Additionally, when Sawyer and her husband told Mills they were about to be evicted from the building where their art studio was located, Mills wired her $100,000 so they could buy the building. Finally, the Sawyers often accompanied Mills on vacations at his expense.

[2] Though Sawyer describes the complicated manner in which Mills attempted to keep the payments he made hidden from his employees, the details are not relevant to the disposition of this case.

Mark Moseley, on the phone and confirmed he had agreed to pay a bonus to Sawyer. However, Mills later refused to sign any written agreement.

Mills made his first payment of $10,000 to Sawyer the day of the meeting, and he eventually made a series of payments of $10,000 each, and one of $15,000, totaling $65,000. Mills also made a one-time payment of $100,000 on October, 3, 2001. The last payment was paid on February 7, 2002, and Mills informed Sawyer in March that he was terminating her employment at the end of the month. He had paid her a total amount of $165,000. It was undisputed that Sawyer had completed her performance that might justify any bonus prior to the June 25 conversation between the parties, and also that she continued to work for Mills after the agreement.

Prior to trial, Mills moved for summary judgment, arguing that enforcement of the agreement was barred by Kentucky's Statute of Frauds and raising lack of consideration as a defense. The trial court denied the motion.

After a four-day trial, the jury returned a verdict for Sawyer and awarded her $900,000, and a trial verdict and judgment was entered. In response to two interrogatories, the jury answered that it was satisfied from the evidence that the parties reached an understanding and agreement as to the bonus at issue, and that the understanding and agreement could have been fully performed within one year of its making.

Mills moved the trial court for a JNOV, and it was granted. The court specifically explained that it

> had previously addressed its concerns that this Statute of Frauds barred the claims of Cindy against Mel in this case. However, out

4

of an abundance of precaution, in order to allow Cindy to present her full evidence at trial before a jury, the Court Overruled Mel's Motion for Summary Judgment on this issue in an Opinion and Order entered December 1, 2005.

After hearing Sawyer's full evidence at trial, however, the trial court found that the Statute of Frauds did in fact bar her claims and it granted Mills's JNOV motion. The Court of Appeals affirmed the trial court's ruling, and this Court granted discretionary review.

## II. Analysis

## A. The June 25, 2001 Oral Agreement

## 1. Application of the Statute of Frauds Where the Agreement's Terms and the Parties' Intentions Demonstrate It Could Not Be Completed Within One Year

Assuming there was a contract in this case, the Statute of Frauds applies and bars its enforcement. Kentucky's Statute of Frauds provides in pertinent part,

> No action shall be brought to charge any person . . . [u]pon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent . . . .

KRS 371.010(7). "In construing the Statute of Frauds, the general rule is that, if a contract may be performed within a year from the making of it, the inhibition of the Statute does not apply, although its performance may have extended over a greater period of time." Williamson v. Stafford, 301 Ky. 59, 190 S.W.2d 859, 860 (1945). However, "there is a well-recognized exception" to

the general rule, "and that is that when it was contemplated by the parties that the contract would not, and could not, be performed within the year, even though it was possible of performance within that time, it comes within the inhibition of the Statute." Id. (emphasis added). This Court "must look to the evidence to determine whether the contracts in question fall within the rule or the exception." Id. at 861.

The Statute of Frauds "refers to a contract which, by its terms, is not to be performed within a year, and which, from its stipulations, is not capable of being performed within a year." Nickell v. Johnson, 162 Ky. 520, 172 S.W. 938, 938 (1915); see also Lively v. Elkhorn Coal Co., 101 F.Supp. 1014, 1016-17 (E.D. Ky. 1952) ("[W]here it is obvious from all surrounding facts and circumstances that it was not within the contemplation of the parties or within reason that it would be performed within a year the statute applies.") The appropriate inquiry thus is whether under the evidence of a particular case the parties contemplated that the contract at issue would be performed within a year, and if, by its terms, it could be. It is irrelevant whether performance would be possible under different terms. A contrary rule—that if it is possible to perform a contract within a year even though such completion is not contemplated by the parties—would eviscerate the Statute of Frauds' requirement that agreements not to be performed within one year be in writing.

Under well-settled precedent, this Court must determine whether Sawyer and Mills contemplated that their oral contract would be, or could be under its terms, performed within a year, even though Mills acknowledged that he could

have paid the entire amount at the time of the negotiations. Williamson, 190

S.W.2d at 860.

This case involves the trial court's grant of a JNOV motion.

> Upon review of the Order Granting JNOV, we must examine the
> trial court's decision under the clearly erroneous standard. . . .
> That is to say, we must review all the evidence presented to the
> jury and must uphold the trial court's decision if after all the
> evidence is construed most favorably to the verdict winner, a
> finding in his favor would not be made by a reasonable [person].

Moore v. Environmental Constr. Corp., 147 S.W.3d 13, 16 (Ky. 2004) (internal

citation and quotation marks omitted). For the purpose of the JNOV motion,

the trial court properly considered the evidence in the light most favorable to

Sawyer, the verdict winner and party opposing the JNOV motion, accepting

many of the disputed facts as true. Among other things, the trial court

accepted the following as true:

> (5) That in the June 25, 2001 conversation between Mel,
> Cindy, and Cindy's husband, Steve Sawyer (hereinafter "Steve"),
> the figure of One Million Dollars ($1,000,000.00) was first proposed
> by Cindy and Steve as a lump sum payment. Mel clearly balked at
> that figure as a lump sum payment. Quickly, Steve Sawyer, with
> Cindy's encouragement and agreement, suggested that a total
> payment of One Million Dollars ($1,000,000.00) plus the cost of a
> new luxury car to be paid over ten (10) years at Ten Thousand
> Dollars ($10,000.00) per month until paid would be acceptable to
> them. This was the undisputed sworn testimony of Cindy, Steve,
> and their attorney Mark Mosely [sic] at trial. The Court, in
> accordance with the above JNOV standard, accepts that testimony
> without qualification. Further, that testimony was accepted by the
> jury in this case as reflected by the jury verdict when "Yes" was
> checked in response to Interrogatory No. 1 which specifically found
> that Cindy and Mel had each understood and agreed that Mel
> would pay Cindy a bonus in the amount of One Million Dollars and
> the value of a new car costing Sixty Five Thousand Dollars for
> services performed by Cindy for the benefit of Mel per Jury
> Instruction No. 1.

Based on the undisputed fact that Mills "clearly balked" at an agreement where he would have to make a one-million-dollar lump sum payment, such a payment was not a part of the oral agreement.

Instead, Mills orally agreed to make a $1,065,000 payment "over ten (10) years at Ten Thousand Dollars ($10,000.00) per month until paid." The trial court noted that this understanding was also reflected in Sawyer's Answer to Interrogatory No. 8 in which she stated in her Amended Answer in part, "The bonus was to be paid in monthly installments of $10,000.00 and on the first of each month." Attorney Mark Moseley's written draft agreement, which Mills never signed, recognized that the total amount would be paid out over 107 months, with the last month's payment being $5,000.

In Kentucky Utilities Co. v. Hurst, 207 Ky. 448, 269 S.W. 525 (1925), the Court concluded that the agreement's terms and parties' intentions determine whether a contract could be completed within one year so as to avoid the Statute of Frauds. Specifically, the Court concluded the lower

> court should have sustained defendant's motion for a peremptory instruction, upon the ground that the alleged special contract for the furnishing of the water, and upon which the action is based, was verbal, and was one which, under the circumstances and the contemplation of the parties at the time, was not to be performed within one year from the time of its making, and was therefore inhibited by . . . the statute of frauds.

Id. at 526.

Subsequent to Hurst, the Court was again confronted with a similar issue and it reaffirmed its position. The Court quoted the appellee's testimony and concluded "[c]learly, the evidence for both parties shows that it was not

8

contemplated by either of them that the contract was to be performed, or could be performed, within a year." Williamson, 190 S.W.2d at 861. The only testimony offered by the appellees in that case was that if the agreement had been completed, "the parties contemplated that it would require several years to perform under it." Id.

Consistent with Hurst and Williamson, the trial court in this case was not clearly erroneous in finding that Mills never agreed to a lump sum payment payable within one year. Mills never signed a writing consistent with the oral discussions of the parties. The agreement's terms and the parties' intentions demonstrate this agreement could not be completed within one year, and thus the trial court was correct that as a matter of law the June 25 oral agreement between Sawyer and Mills failed the writing requirement of the Statute of Frauds, and was unenforceable under the statute. As the trial court observed, "[i]f the Statute of Frauds, codified at KRS 371.010(7), does not apply to the undisputed testimony in the case at bar, it would be hard to imagine any case where it would apply."

## 2. Completed Performance and Past Consideration

Sawyer claims the agreement is nonetheless enforceable because she completed her performance, taking the agreement outside the operation of the Statute of Frauds, as a completed executory contract. However, because Sawyer concedes she had completed her performance prior to the June 25, 2001 oral agreement, it was supported only by past performance, which is no

9

consideration at all, and thus, under this argument, there was not a binding contract.

Sawyer cites Pitcher v. Sadler, 276 Ky. 450, 124 S.W.2d 475, 479 (1939), for the proposition that completed performance by one party removes an agreement from the Statute of Frauds: "[A] contract is no longer executory, and [the Statute of Frauds] has no application thereto, where it has been fully performed upon one side and the other party by its terms has a longer time than one year in which to perform his part thereof." The Court of Appeals correctly noted, however, that Sawyer did not perform any obligations pursuant to this agreement.

"[I]t is a general rule that past consideration is insufficient to support a promise." 17A Am. Jur. 2d Contracts § 152 (2009). Simply put, Sawyer's claim that her completed performance takes her agreement outside of the operation of the Statute of Frauds fails, because the fact that her performance was done prior to the offer Mills made on June 25 means there was no consideration for the promise Mills made on that date.

In Greenup v. Wilhoite, 212 Ky. 465, 279 S.W. 665, 666 (1926), the Court described a similar situation and the applicable law as follows:

> Appellants insist that the services for which appellee claims compensation had all been performed before the making of the contract sued on, and the consideration for the contract having all passed, the contract has failed for want of a supporting consideration. They insist that a past consideration which is some act of forbearance in time past by which a man has benefited, without thereby incurring any liability, is not sufficient to support an executory contract, and this is ordinarily true.

10

Id. In that case, however, the agreement was upheld because part of the consideration—in the form of services—was not yet given at the time the parties entered into the agreement, which further underscores that the agreement and consideration must be dependent on each other. Id. ("Manifestly the parties to the contract contemplated that the appellee Mrs. Wilhoite was to receive compensation, not only for services which she had performed up to the time of the making of the contract, but for all services which she was to perform for Miller Wilhoite, Sr., during the remainder of his life.").

Though Sawyer also contends that she continued to work for Mills after the agreement regarding her prior performance was made on June 25, she did in fact receive other multiple substantial payments from Mills after the agreement for that work. It therefore cannot also be used as the consideration going forward from the June 25th agreement.

Sawyer also relies upon Fisher v. Long, 294 Ky. 751, 172 S.W.2d 545 (1943), for the proposition that a contract that is unenforceable because a term is not yet decided becomes enforceable if an agreement on the term is ever reached, that is, once the blank is filled in by the parties. Fisher, however, is distinguishable because the parties in that case had already reached a written agreement with valid consideration and mutual obligations, and all that remained was to make a simple mathematical calculation. Id. at 547 ("Here there was a meeting of the minds . . . This was the essential agreement. . . . It

11

took no expert accountant to 'adjust this difference in cash.'"). <u>Fisher</u> is simply inapposite.

Finally, Sawyer objects to Mills's attempt "to obfuscate this issue with circular logic," arguing that if Sawyer had completed her performance at the time the bonus amount was filled in (as she concedes), there was no consideration and the contract was unenforceable, but if she had not completed performance at the time the bonus was filled in, the contract had to be in writing to be enforceable. This is not obfuscation. That Sawyer loses for two independent reasons does not undermine the logic, or make it circular. Consequently, the JNOV granted by the circuit court was appropriate.

### 3. The Audio Tape Recording of the Parties' Conversation and Cancelled Signed Checks as a Basis for Satisfying the Statute of Frauds' Writing Requirement

Sawyer also claims that the audio tape of Mills's voice and cancelled signed checks provide the basis for satisfying the Statute of Frauds' writing requirement under the federal Electronic Signatures in Global and National Commerce Act ("E-SIGN") and <u>Calloway v. Calloway</u>, 707 S.W.2d 789 (Ky. App. 1986).

She first claims that the Statute of Frauds' writing requirement is preempted by 15 U.S.C. § 7001(a), which provides,

> Notwithstanding any statute, regulation, or other rule of law . . . with respect to any transaction in or affecting interstate or foreign commerce--
> > (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and

12

(2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

However, under 15 U.S.C. § 7001(a)(1), the oral agreement is not being denied "legal effect, validity, or enforceability solely because it is in electronic form." (Emphasis added.) The oral agreement is being denied legal effect because it fails the writing requirement of the Statute of Frauds and under E-SIGN there is not an electronic signature. Therefore, contrary to Sawyer's assertions, the Statute of Frauds' writing requirement is not preempted by E-SIGN in this case.

Under E-SIGN, "'electronic' means relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic, or similar capabilities." Id. § 7006(2). "'[E]lectronic record' means a contract or other record created, generated, sent, communicated, received, or stored by electronic means." Id. § 7006(4). At issue in this case is the tape recording of the conversation between Sawyer and Mills. Under 15 U.S.C. § 7006(2)'s broad definition of "electronic," the tape recording is electronic, and it is an "electronic record" because it was a "record created" and "stored by electronic means" under 15 U.S.C. § 7006(4).

However, contrary to Sawyer's assertions, Mills's voice does not constitute an electronic signature merely because it was identifiable and was identified at trial as being his. An electronic signature under 15 U.S.C. § 7006(5) requires that "an electronic sound, symbol, or process, attached to or

13

logically associated with a contract or other record" be "executed or adopted by a person with the intent to sign the record."

There must be intent to attach or logically associate the electronic signature to the agreement, that is, an intent to execute the contract. That was impossible here, because the medium on which the alleged agreement and electronic signature were recorded (the audio tape) was used surreptitiously. Mills did not know he was being recorded when he went to the Sawyers' art studio. Thus, Mills's identifiable voice on the tape, even if construed as an electronic signature, was procured without Mills's knowledge or intent, and would be tantamount to a forgery which cannot be used to demonstrate a valid contract. Cf. E. L. Strobin, Annotation, Procuring Signature by Fraud as Forgery, 11 A.L.R.3d 1074, § 5 (1967 & Supp. 2009) ("[W]here a genuine signature to an instrument is procured by some trick or device without intent on the part of the party signing to execute such an instrument, the attitude of the courts has been that the signature thereto will be treated in law as a forgery.). The statute contemplates more than a mere verbal assent recorded in secret; it requires the electronic equivalent of a signature, that is, an electronic sound, symbol, or process solemnizing the agreement and evidencing an intent to enter into it.

That the recording was not intended to be a signature is further supported by the fact that the parties evidenced some intent to draft and sign a written contract to memorialize their understanding, which Mills refused to sign. Clearly then, Mills did not have any intent to "execute" or "adopt" the

14

conversation that took place, and he did not "sign the record" memorializing it that was drafted by Sawyer's attorney. Sawyer's claim that E-SIGN provides a basis for satisfying the Statute of Frauds in this case fails.

Sawyer next claims that Calloway, 707 S.W.2d 789, controls the outcome in this case because the tape recording cannot be barred by the Statute of Frauds. Calloway, which involved an oral statement recorded by a court reporter, is distinguishable for many reasons. In that case, the husband explicitly agreed to a settlement agreement under oath, and the court relied on an estoppel theory "in light of the peculiar circumstances of [that] case," to hold that a settlement agreement entered into during a judicially sanctioned proceeding was sufficient to satisfy the Statute of Frauds. Id. at 792. The court noted, "We cannot overlook the importance of stipulations between litigants and the promotion of expeditious and complete justice by their enforcement provided no harsh or unfair contract results." Id. In sum, Calloway involved a unique set of facts involving a stipulation under oath at a deposition where the court relied on an estoppel theory, not a surreptitiously recorded conversation as in this case. Therefore, Calloway is easily distinguished.

Finally, Sawyer claims that Mills's voice, coupled with cancelled signed checks, is sufficient to satisfy the Statute of Frauds. The same rationale for why the recording cannot be a sufficient electronic signature applies here to bar the recording from being a "memorandum" of the parties' agreement. Given the secret nature of the recording and the expressed intent to draft a

15

written document, the recording cannot have been intended by Mills as the repository of the parties' agreement. Cf. Ellis Canning Co. v. Bernstein, 348 F.Supp. 1212 (D. Colo. 1972) (allowing audio recording to satisfy writing requirement but only where parties agreed that the recording would be the contract).

As for the checks, in addition to the fact that the cancelled signed checks for monthly payments to Sawyer are inconsistent with her claim that the agreement could be completed within one year, Sawyer does not cite any law that signed checks satisfy the Statute of Frauds, and this Court is not persuaded that they do. Though some courts have held that checks can be used to demonstrate the existence of a contract, those checks almost invariably include references to the terms of the contract or a document that contains the terms. See, e.g., Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir. 1984) ("delivery of signed rental checks which contained specific references to the written lease, would be sufficient to satisfy the Statute of Frauds"); Clark v. Larkin, 239 P.2d 970 (Kan. 1952) (notation of terms on check). In the one Kentucky case on the subject, the check in question referred to the "property" and the sale was confirmed in a letter a few days later. See Purtell v. Bell, 179 Ky. 356, 200 S.W. 644, 645 (1918) ("Obviously the check, indorsement thereon, and letter together designate and identify the real estate, its location, and the terms of the contract . . . ." (emphasis added)).

In this case, the checks, rather than evincing an agreement involving a quid pro quo, are just as consistent with a gratuitous bonus of the sort paid to

16

Mills's other employees.  Sawyer is basically claiming that two halves make a whole, but in this case neither side makes a "half," and thus together they do not make a "whole" writing sufficient to satisfy the Statute of Frauds.

### 4. Promissory Estoppel

Despite the parties' dispute over whether the issue of promissory estoppel was properly preserved and appealed, it is clear that the trial court was correct in concluding there was insufficient proof to support a jury instruction on the issue.

The doctrine of promissory estoppel provides as follows:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires."

Meade Constr. Co. v. Mansfield Commercial Elec., Inc., 579 S.W.2d 105, 106 (Ky. 1979) (quoting Restatement (Second) of Contracts § 90 (Tentative Draft No. 2, 1965)).[3]

First, it is not clear that under Kentucky law promissory estoppel can defeat the Statute of Frauds.  Though the headnotes for the case state otherwise, the Court of Appeals has recently held that a claim of promissory estoppel "alone is not sufficient to defeat the statute of frauds; actual fraud

---

[3] Though after quoting the doctrine of promissory estoppel in Meade Constr. Co., this Court noted that it did not at that time "decide whether the doctrine of promissory estoppel applies in this state or whether, if so, it governs this case," id. at 106, it has since become clear that "the doctrine of promissory estoppel, if it can be established, is 'alive and well' in this Commonwealth." McCarthy v. Louisville Cartage Co., 796 S.W.2d 10, 11 (Ky. App. 1990).

must be proven." <u>Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.</u>, 113 S.W.3d 636, 642 (Ky. App. 2003). As the court then noted, the claim "confuses promissory estoppel with equitable estoppel, and incorrectly interchanges the terms . . . ." <u>Id.</u> Equitable estoppel requires a fraudulent misrepresentation as to a material fact, which has not been claimed in this case.

While this Court has stated that "the statute of frauds is not a bar to a fraud or promissory estoppel claim based on an oral promise of indefinite employment," <u>United Parcel Service Co. v. Rickert,</u> 996 S.W.2d 464, 471 (Ky. 1999), the statement was only dicta, as the decision turned on equitable estoppel (i.e., a claim of fraud). More recently this Court stated that it is "incorrect[] [to] infer[] from <u>Rickert</u> that detrimental reliance is a bar to the statute of frauds. All that may be deduced from <u>Rickert</u> concerning the statute of frauds is that in a fraud or promissory estoppel action involving a promise of employment, it does not act as a bar." <u>Farmers Bank and Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.</u>, 171 S.W.3d 4, 10 (Ky. 2005); <u>see also</u> <u>Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.</u>, 58 F.3d 1227, 1231 (7th Cir. 1995) (Posner, J.) ("[T]he statute of frauds is applicable to a promise claimed to be enforceable by virtue of the doctrine of promissory estoppel." (citing <u>First National Bank v. McBride</u>, 642 N.E.2d 138, 142 (Ill. 1994); <u>Dickens v. Quincy College Corp.</u>, 615 N.E.2d 381, 386 (Ill. 1993), and relying on Illinois law)). <u>Willmott Hardwoods, Inc.</u> then went on to hold that except in the most extreme circumstances, even equitable estoppel

(which involves fraud) cannot defeat the statute of frauds, "lest the Court run afoul of judicially amending the statute in violation of separation of powers." Id.[4]

But even assuming that promissory estoppel could allow a plaintiff to get around the Statute of Frauds, Sawyer cannot invoke the doctrine in this case. First, promissory estoppel requires "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance . . . ." Meade Constr. Co., 579 S.W.2d at 106. Sawyer argues in this regard that she agreed to continue working for Mills at his request after the agreement and bypassed other job opportunities, in reliance upon his promise.

But there is no reasonable basis to argue that Mills believed Sawyer continued working for him from June 25, 2001 through March 2003 because of his promise. During that time, he paid her $165,000 in line with his promise, and paid her as an hourly employee until he released her from employment. At no time has the testimony indicated that his promise to her on June 25 was premised on her continued employment with him. There is no indication that he asked her not to accept other employment. Indeed, during that nine month span of time, the $165,000 dollars paid to her under his promise could

---

[4] Even those states allowing equitable estoppel to reach the Statute of Frauds frequently require, for example, that "either an unconscionable injury or unjust enrichment would result from refusal to enforce the contract . . . ." Monarco v. Lo Greco, 220 P.2d 737, 741 (Cal. 1950) (Traynor, J.). Though, as one commentator has noted, following the adoption of the Restatement (Second) of Contracts, some states required only "injustice" rather than unconscionable injury or unjust enrichment. See 2 Alan E. Farnsworth, Farnsworth on Contracts § 6.12, at 207-08 (3d ed. 2004).

19

reasonably have led Mills to believe that she did not need the hourly employment, but continued working for him in hope of future benefits. He had no cause to "reasonably expect" action or forbearance from Sawyer. Also, at best, Sawyer alleges a reliance based only on her own statements; nothing else in the record supports her claim that she continued working for Mills for nine months after his promise <u>because</u> of that promise. Sawyer does not make a supportable promissory estoppel claim.

## B. Prejudgment Interest

Because this Court concludes the trial court did not err in granting the JNOV motion in Mills's favor, it is unnecessary to address the issue of prejudgment interest for Sawyer.

## III. Conclusion

Because the terms of the agreement and the parties' intentions demonstrate it could not be completed within one year, the Statute of Frauds required that it be in writing, but that was never done. Additionally, since Sawyer concedes she completed performance before the June 25, 2001 conversation, the agreement lacked valid consideration and could not be a binding contract. The audio tape recording and cancelled signed checks do not serve as a basis for satisfying the Statute of Frauds' writing requirement in this case. Finally, Sawyer does not have a claim for promissory estoppel because the record does not substantiate her claim that she relied on Mills's promise by way of a forbearance or action, and Mills could not have reasonably been

20

expected to believe that she had. The JNOV entered by the trial court was appropriate.

For the foregoing reasons, the Court of Appeals is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Thomas W. Miller
Michael Joseph Cox
Miller, Griffin & Marks, PSC
271 West Short Street, Suite 600
Lexington, Kentucky 40507


COUNSEL FOR APPELLEE:

William E. Johnson
Samuel Ryan Newcomb
Johnson, True & Guarnieri, LLP
326 West Main Street
Frankfort, Kentucky 40601

# Supreme Court of Kentucky

## 2007-SC-000296-DG

BARBARA LUCINDA SAWYER                            APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                  CASE NO. 2006-CA-000697-MR
FAYETTE CIRCUIT COURT NO. 2003-CI-01679

MELBOURNE MILLS, JR.                            APPELLEE

## ORDER

On the Court's own motion, the Opinion of the Court by Justice Noble rendered August 27, 2009 shall be modified on page 20, line 8. Pages 1 and 20 shall be substituted, as attached hereto, in lieu of pages 1 and 20 of the Opinion as originally rendered. Said modification does not affect the holding.

Entered: November 2, 2009.

_____
CHIEF JUSTICE