RENDERED: JANUARY 19, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0090-MR

GREGORY GIBSON; AND
SAMUEL GIBSON                                                          APPELLANTS


APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 19-CI-01881


ANDERSON PROPERTIES, L.L.C.;
ANDERSON COMMUNITIES, INC.; AND
HARMONY HB, L.L.C.                                                       APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND TAYLOR, JUDGES.

ECKERLE, JUDGE:  Appellants, Gregory Gibson and Samuel Gibson

(collectively, "the Gibsons"), appeal from a summary judgment of the Fayette

Circuit Court dismissing their claims against Appellees, Anderson Properties,

L.L.C., Anderson Communities, Inc., and Harmony HB, L.L.C. (collectively,

"Anderson"). The Gibsons also appeal from the Trial Court's denial of their motion to file an amended complaint. The Gibsons assert that there were genuine issues of material fact regarding their claims of disability discrimination, breach of contract, and retaliation, and that they sufficiently pleaded a cause of action for misrepresentation. We agree with the Trial Court that the Gibsons failed to make *prima facie* showings on their discrimination and retaliation claims, and that promissory estoppel does not preserve their claim for breach of contract. We also agree that the Gibsons' allegations of misrepresentation lacked specificity; thus, the proposed amended complaint would have been futile. Hence, we affirm.

## I.  Factual and Procedural History

Anderson's three entities are affiliated realty, development, and construction companies. Dennis Anderson is the president and registered agent of Anderson Communities, Inc. and Harmony HB, L.L.C. Bryan Anderson is the president and registered agent of Anderson Properties, L.L.C. The parties agree that the Gibsons were interested in building a house with accessibility modifications to accommodate Sam Gibson, Gregory Gibson's son. Anderson had previously built and sold a home for Sam Gibson's mother (Gregory Gibson's ex-wife) with similar modifications. In 2018, Gregory Gibson began discussions with Anderson about the sale of a lot and construction of a residence at 182 Ash Rapids Road. Most of the discussions took place with Robert Milam, a real estate agent

employed by Anderson ("Milam"), and Jeremy Gribbins, chief operations officer for Harmony HB ("Gribbins").

On July 15, 2018, Gregory Gibson submitted an "Offer to Purchase Contract for New Construction" ("the 2018 Offer") to Anderson. That Offer proposed that Gibson would pay, and Anderson would accept, $359,995.00 for the property and construction. Paragraph 24 set out additional terms and conditions:

> 1. This offer is contingent upon seller being able to accommodate special requests for floorplan modifications due to accessibility challenges.
>
> 2. This offer to purchase is contingent upon final pricing and design meeting.
>
> 3. This offer to purchase is contingent upon buyer securing financing within 7 business day [*sic*] from date of signed contract.
>
> 4. If contingencies #2 and #3 are not removed in full on or before 7/31/2018, this contract shall be null and void.

The Schedule B Addendum attached to the 2018 Offer lists the "upgrades" and customizations initially selected by the Gibsons. At the time of the 2018 Offer, the price of these "Options" totaled $83,000, and included an unfinished basement (at a cost of $67,000) and two woodburning fireplaces. The 2018 Offer stated that it would become a "legally binding contract" when executed by all parties, which occurred on July 23, 2018. Directly before the signatures of both parties appeared the following bold-print language:

We have read this CONTRACT, fully understand the contents thereof, understand and agree that this is the entire agreement between the parties, understand that upon signing, this CONTRACT becomes legally binding, and acknowledge receipt of a copy of CONTRACT. We further acknowledge that we are not relying on any verbal statements or representations, made by either BUILDER, BUYER or the REALTORS, either expressly or implicitly, warranting the property, its size, construction, condition or materials used, nor any of the fixtures, appliances, appurtenances or amenities.

The Gibsons did not secure financing within the time prescribed in the offer. However, the parties continued to discuss the purchase and construction of the residence. The Gibsons paid $2,400 for architectural drawings of the home. On January 16, 2019, Gregory Gibson submitted a letter to Anderson from Guardian Savings Bank. The letter stated that Gregory Gibson had been "preapproved" to purchase the home with "conventional financing" and at a purchase price of $359,995. However, the letter specifically stated that it was not a final commitment to financing but was contingent upon the execution of a purchase contract, satisfactory appraisal, and any other conditions requested by Guardian's underwriting. A second preapproval letter from Guardian, received by Anderson on January 24, 2019, indicated that Gregory Gibson was preapproved for financing of $450,000, but also required him to pay off a loan to Loanme, Inc.

On February 25, 2019, Gregory Gibson submitted a new "Offer to Purchase for New Construction" ("the 2019 Offer"). The 2019 Offer proposed that

he would purchase, and Anderson would construct the home for $424,330. The Schedule B Addendum to this Offer reflected additional upgrades over those in the 2018 Offer. The 2019 Offer proposed Gregory Gibson would make a cash advance of $21,217.00 to be paid in three monthly installments of $7,000 each. He tendered the first $7,000 payment with the Offer.

Anderson did not sign or accept the 2019 Offer and returned the down-payment. As a basis for declining the offer, Anderson cited the high cost of the upgrades, the relatively low amount of the down payment, and the unpaid loan to Loanme, Inc. At a meeting on March 13, 2019, Anderson advised the Gibsons that it was not going forward with the construction or sale under the terms in the 2019 Offer. However, Anderson indicated that it would be willing to build and sell the home under different financing terms.

The Gibsons filed this action against one Anderson entity on May 22, 2019. By amended complaints, they also asserted claims against the other two Anderson entities. They asserted claims for breach of contract, disability discrimination in housing, and retaliation. The parties engaged in discovery, which included the depositions of Milam and Gribbins. Thereafter, Anderson moved for summary judgment on all claims. In their response, the Gibsons requested leave to file another amended complaint to assert a claim for misrepresentation.

In an order entered on December 8, 2022, the Trial Court granted Anderson's motion for summary judgment and denied the Gibsons' motion to file an amended complaint. The Gibsons filed a timely CR[1] 59.05 motion, requesting that the Trial Court reconsider both motions. The Trial Court denied the motion on January 13, 2023. This appeal followed. Additional facts will be set forth below as necessary.

## II. Summary Judgment Standard

The Gibsons primarily argue that the Trial Court erred by granting Anderson's motion for summary judgment on all of their claims. The standard of review governing an appeal of a summary judgment is well-settled. We must determine whether the Trial Court erred in concluding that there were "no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. In *Paintsville Hospital Company v. Rose*, 683 S.W.2d 255 (Ky. 1985), the Kentucky

---

[1] Kentucky Rules of Civil Procedure.

Supreme Court held that for summary judgment to be proper, "the movant shows that the adverse party could not prevail under any circumstances." *Id.* at 256.

Our Supreme Court also stated that "the proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). However, the word "impossible" "is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). Furthermore, the party opposing summary judgment "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Steelvest*, 807 S.W.2d at 481 (internal quotation marks and citations omitted). "Because summary judgments involve no fact finding, this Court reviews them *de novo*, in the sense that we owe no deference to the conclusions of the trial court." *Blevins v. Moran*, 12 S.W.3d 698, 700 (Ky. App. 2000).

## III.   Disability Discrimination

The Gibsons first argue that summary judgment was inappropriate on their housing-discrimination claim under the Kentucky Civil Rights Act

("KCRA"). The Gibsons initially cite to KRS[2] 344.600. However, this section specifically addresses how an aggrieved person may file a complaint with the Kentucky Human Rights Commission after an alleged discriminatory housing practice has occurred. Thus, it is clearly not applicable in this case.

However, the Gibsons also refer to KRS 344.360, which sets out unlawful housing practices. In pertinent part, the statute states that it is an unlawful housing practice for a real estate operator, broker, or salesman "[t]o refuse to negotiate for the sale, rental, or lease of real property to any person because of race, color, religion, sex, familial status, *disability*, or national origin[.]" KRS 344.360(4) (emphasis added). Section 11(b) of the statute further defines unlawful housing discrimination to include "[a] refusal to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person equal opportunity to use and enjoy a housing accommodation[.]" The Gibsons maintain that Anderson engaged in unlawful housing discrimination when it refused to build and sell an accessible residence for Sam Gibson.

Since the relevant language of KRS 344.360 is virtually identical to its federal counterpart, 42 U.S.C.[3] § 3604, the interpretation given by the federal

---

[2] Kentucky Revised Statutes.

[3] United States Code.

courts is persuasive. *Lexington-Fayette Urb. Cnty. Hum. Rts. Comm'n*, No. 2002-CA-001234-MR, 2003 WL 22271567, at *4 (Ky. App. Oct. 3, 2003). *See also Comm'n on Hum. Rts. v. Fincastle Heights Mut. Ownership Corp.*, 633 S.W.3d 808, 816 (Ky. App. 2021). A *prima facie* housing discrimination case is shown when the plaintiff provides: (1) that he or she is a member of a protected class, (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter. *Mencer v. Princeton Square Apartments*, 228 F.3d 631, 634-35 (6th Cir. 2000) (citing *Selden v. United States Dep't of Hous. and Urban Dev.*, 785 F.2d 152, 160 (6th Cir. 1986)) (adapted from the three-part evidentiary standard first developed in the employment discrimination context by *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). If the plaintiff satisfies those elements, then "the defendant must offer a legitimate nondiscriminatory reason for the housing decision made." *Mencer*, 228 F.3d at 634. "Finally, the plaintiff must show that the proffered reason is a pretext that masks discrimination." *Id.*

For summary judgment purposes, Anderson concedes that Sam Gibson is a disabled person protected by the KCRA. However, Anderson argues that the Gibsons failed to show that they were qualified to purchase the property. As noted above, Gregory Gibson was unable to secure financing within the time

allowed by the 2018 Offer. While he secured a preapproval letter at the time he submitted the 2019 Offer, that financing was conditioned upon payment of his obligation to Loanme, Inc. Anderson also points to other "red flags" regarding financing – specifically the high cost of construction, the high-risk nature of the obligation to Loanme, and the low cash advance provided in the Gibsons' 2019 offer. Finally, Anderson states that it never refused to build or sell the residence. Rather, it only refused to do so under the terms in the Gibsons' 2019 Offer.

The Gibsons maintain that the financing issues were merely a pretext for Anderson's discriminatory intent. They state that the Loanme obligation was only a loan to Gregory Gibson's business and not his personal loan. Furthermore, the Gibsons also note that Anderson never expressed any concerns about the financing issues until they added the additional accessibility modifications.

In addition, the Gibsons cite to comments by Milam and Gibbins that the proposed accessibility modifications would make the residence "too unique" and limit its resale value. The Gibsons further maintain that Gregory Gibson's prior history of working with Anderson should have been sufficient to alleviate any concerns about financing. We conclude that this evidence was insufficient to establish a necessary element of the Gibsons' *prima facie* case or to establish that Anderson's stated non-discriminatory justification was pretextual.

The Gibsons had the burden of presenting proof on each element of their *prima facie* case.  If the Trial Court had concluded that there was sufficient proof on each element of the Gibsons' *prima facie* case, the Gibsons would have been entitled to "an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  *Williams v. Brown-Forman Corp.*, 640 S.W.3d 73, 82 (Ky. App. 2021) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981)).  Furthermore, "there must be at least a logical connection between each element of the *prima facie* case and the illegal discrimination for which it establishes" this presumption.  *Id.* at 82 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311, 116 S. Ct. 1307, 1310, 134 L. Ed. 2d 433 (1996), and *Burdine*, 450 U.S. at 254 n.7, 101 S. Ct. at 1094 n.7).  A causal connection can be established through either direct or circumstantial evidence.  *Kentucky Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 135 (Ky. 2003).

In this case, the Gibsons present no evidence, circumstantial or otherwise, showing a connection between Sam Gibson's disability and Anderson's unwillingness to proceed with construction and sale of the residence.  Under both the 2018 and 2019 Offers, the Gibsons were required to secure financing.  Gregory Gibson did not secure financing for the 2018 Offer, and the financing for his 2019

-11-

Offer was conditional. Anderson's concerns about financing were not connected to Sam Gibson's disability. Thus, we agree with the Trial Court that the Gibsons failed to establish a *prima facie* case through a showing that they were qualified to purchase the property.

Even if the Gibsons could show that they were otherwise qualified to finance and purchase the property, we agree that they failed to present evidence of pretext. The Gibsons added a substantial number of upgrades to their 2019 Offer, which significantly increased the costs of construction. Anderson's concerns about financing and resale value were focused on whether the Gibsons would be able to purchase the residence once it was completed. And Anderson's concerns about the resale value did not relate to the disability-related modifications, but only to other modifications, including substantial upgrades to the basement.

The Gibsons merely assert that Anderson was unwilling to build the residence with the accessibility modifications. They rely only on the close temporal proximity between their 2019 Offer and Anderson's rejection of that offer. A close temporal proximity alone between the protected activity and the adverse action may be sufficient to raise an inference of either discriminatory intent or pretext. *McCullough*, 123 S.W.3d at 135. But in this case, the Gibsons' evidence merely demonstrates that the parties had not reached a meeting of minds over the terms of the offer. Under the circumstances, we conclude that the Trial

-12-

Court properly granted summary judgment on the Gibsons' claim for violation of the KCRA.

## IV. Promissory Estoppel

The Gibsons next assert that the Trial Court erred dismissing their breach-of-contract claim against Anderson. As noted above, the 2018 Offer expressly provided that it was null and void if the Gibsons failed to secure financing by the end of July. However, the Gibsons contend that Anderson induced them to continue going forward despite the termination provision in that offer. Consequently, they argue that there were genuine issues of material fact on their defense of promissory estoppel. Under the doctrine of promissory estoppel:

> [a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Meade Constr. Co. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 90 (Tentative Draft No. 2, 1965)).

But even when promissory estoppel is applicable, it remains subject to the Statute of Frauds. *Sawyer v. Mills*, 295 S.W.3d 79, 89-90 (Ky. 2009). Under KRS 371.010(6), a contract for the sale of real estate must be in writing. *See also*

*Smith v. Williams*, 396 S.W.3d 296, 299 (Ky. 2012). Consequently, promissory estoppel alone is not sufficient to defeat the Statute of Frauds. Actual fraud must be proven. *Sawyer*, 295 S.W.3d at 90.

In any case, the Gibsons have not pointed to any explicit promise by Anderson that it intended to forbear enforcement of the financing provision in the 2018 Offer. Indeed, the 2018 Offer specifically disclaimed any oral representations that conflicted with the written disclaimers. At most, the Gibsons contend that Anderson remained silent during the extended negotiations from August 2018 until March 2019, leading them to believe that Anderson intended to move forward with the project. However, those negotiations substantially changed the nature of the construction. The price of the residence increased by nearly $65,000 and required a new financing approval and a new signed offer. Even if Anderson's silence amounted to an implied promise, the Gibsons do not show that they bypassed any opportunities to build a residence in reliance on the alleged promise. *See Scott v. Forcht Bank, NA*, 521 S.W.3d 591, 596-97 (Ky. App. 2017). Therefore, Anderson was entitled to summary judgment as a matter of law on the breach contract claim, and the Gibsons cannot legally overcome the Statute of Fraud's requirement of a writing.

## V.    Denial of Motion to File Amended Complaint

For the same reasons, we conclude that the Trial Court did not abuse its discretion by denying the Gibsons' motion to file an amended complaint asserting a claim for misrepresentation.  The Trial Court has broad discretion as to whether to allow the filing of an amended complaint.  CR 15.01 provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  In determining whether to grant a motion to amend a party's complaint, the Trial Court "may consider such factors as the failure to cure deficiencies by amendment or the futility of the amendment itself."  *First Nat'l Bank of Cincinnati v. Hartman*, 747 S.W.2d 614, 616 (Ky. App. 1988).  Other factors include whether amendment would prejudice the opposing party or would work an injustice.  *See Shah v. Am. Synthetic Rubber Corp.*, 655 S.W.2d 489, 493 (Ky. 1983).  Ultimately, whether a party may amend his complaint is discretionary with the Trial Court, and we will not disturb its ruling unless it has abused its discretion.  *Kenney*, 269 S.W.3d at 869-70.

CR 9.02 requires that all allegations of fraud must be "stated with particularity."  An allegation of fraud in a pleading must set forth the time, place, and substance of the allegedly fraudulent statements.  *Keeton v. Lexington Truck Sales, Inc.*, 275 S.W.3d 723, 726 (Ky. App. 2008).  In this case, the Gibsons failed

to identify Anderson's alleged misrepresentations. Moreover, Anderson's mere silence is not fraudulent absent a duty to disclose. *Smith v. Gen. Motors Corp.*, 979 S.W.2d 127, 129 (Ky. App. 1998). In the absence of any actionable allegations of fraud or a duty to disclose, the amended complaint would have been futile.

## VI. Retaliation

Finally, the Gibsons argue that the Trial Court erred in granting Anderson's motion for summary judgment on their retaliation claims. After Anderson declined to accept the Gibsons' 2019 Offer, Gregory Gibson filed a complaint with the Lexington Bluegrass Association of Realtors. Thereafter, in July 2019, Anderson mailed Gregory Gibson a Notice of Maturation of a wrap-around mortgage he had signed on his ex-wife's property. The Gibsons allege that Anderson took this action in retaliation for his protected activity of filing the complaint.

A *prima facie* case of retaliation requires a plaintiff to demonstrate: (1) that plaintiff engaged in an activity protected by the KCRA; (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse action. *Brooks v. Lexington-Fayette Urb. Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004). In

this case, the Gibsons make no showing that the mortgage became due because of the Gibsons' complaint. By its own terms, the wrap-around mortgage was due and payable on September 28, 2019. Thus, Anderson was entitled to send the maturity notice in July regardless of the prior complaint. Gregory Gibson merely alleges that Milam led him to believe that the mortgage would be extended another year, but he does not allege that Anderson's failure to extend the mortgage was in retaliation for his complaint. Therefore, the Trial Court properly granted summary judgment on the retaliation claim.

## VII. Conclusion

Accordingly, we affirm the summary judgment entered by the Fayette Circuit Court.

THOMPSON, CHIEF JUDGE, CONCURS.

TAYLOR, JUDGE, CONCURS IN RESULT ONLY.

BRIEFS FOR APPELLANTS:

Edward E. Dove
Lexington, Kentucky

BRIEF FOR APPELLEES:

Carroll M. Redford, III
Lexington, Kentucky

D. Jonathan Strom
Lexington, Kentucky