**Robert Mark SCOTT, Appellant**

v.

**FORCHT BANK, NA, Successor in Interest to Laurel National Bank, Appellee**

NO. 2015-CA-000594-MR

Court of Appeals of Kentucky.

MAY 12, 2017; 10:00 A.M.

■

---

BRIEF FOR APPELLANT: Jason E. Williams, London, Kentucky.

BRIEF FOR APPELLEE: Wesley R. Tipton, Corbin, Kentucky.

BEFORE: CLAYTON, JONES, AND NICKELL, JUDGES.

## OPINION

JONES, JUDGE:

The Appellant, Robert Mark Scott ("Scott"), appeals from the March 16, 2015, order of the Laurel County Circuit Court. In that order, the circuit court granted a motion for judgment on the pleadings made by the Appellee, Forcht Bank, N.A. ("Forcht Bank"). For the reasons more fully explained below, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 2008, Scott approached Forcht Bank to obtain financing for the purchase of two undeveloped lots (Lot #23 and Lot #26) located in Cedar Creek Subdivision in Laurel County, Kentucky, and for the cost of building a rental home on one of the lots. According to Scott, the purpose of purchasing Lot #23 and Lot #26 was to construct a rental property, first on Lot #26, then use the proceeds from the rental property and the rental home itself, as collateral, to obtain a second loan from Forcht Bank to build a rental property on Lot #23. According to Scott, Forcht Bank was fully aware of his plans.

On March 5, 2013, Scott met with Chris Jasper ("Jasper"), a loan officer with Forcht Bank. Scott indicated that he approached Jasper with a written plan for the two lots. Scott maintains that before agreeing to the loan terms, he requested assurance from Forcht Bank that he would be able to build on the second lot in accordance with this plans. Scott stated that Jasper assured him that he would be able to build on Lot #23 and that Jasper provided him a form, which Scott filled out explaining why he was buying Lot #23. A copy of this form was never produced during this action. Jasper only recalled reviewing Scott's handwritten construction and post-construction plans. He did not recall Scott stating that he would not accept the loan unless Forcht Bank agreed to a second, later loan for the construction of a rental home on Lot #23.

In September 2008, Scott's loan application was approved by Forcht Bank. In total, Forcht Bank loaned Scott $121,952.59 for the purchase price of Lot #23 and Lot #26 (the price for each lot was $11,500.00) and the cost of building a rental home on Lot #26. Later in 2008, Jasper was dismissed by Forcht Bank. By the fall of 2008 Mike Sharp ("Sharp") was hired by Forcht Bank as its Market President.

In March 2009, Scott completed construction of the rental property on Lot

#26, at which time he approached Forcht Bank and met with Sharp for the purpose of obtaining a loan to build another rental home on the second lot (Lot #23). Scott was denied the second loan from Forcht Bank and, according to him, Sharp asked Scott to sell the property on Lot #26 rather than renting it out as he had originally planned. Scott attempted to sell the home, but it never sold.

In August 2009, due to depleted funds from paying the mortgage out of pocket, Scott rented the property on Lot #26 for $1,200.00 a month. According to Scott, Sharp never informed him during their March 2009 meeting that Forcht Bank would not make the second loan. Scott indicated that had Sharp notified him of this, he would have never attempted to sell the home and would have immediately rented it. Sharp indicated the denial of the second loan could likely be attributed to a change in Forcht Bank's policy, but no documentation of this change was ever produced. Scott was never able to obtain financing from Forcht Bank or any another financial institution to build a second rental property on Lot #23.

Subsequently, Scott filed suit against Forcht Bank for breach of contract, breach of promise, promissory estoppel, detrimental reliance, and various emotional damages. Specifically, Scott alleged that he had relied to his detriment on the alleged promise that Forcht Bank would make a second loan to him so that he could construct a rental home on Lot #23. Scott also alleged that Forcht Bank's failure to make an additional loan to him was a breach of its fiduciary duty.

Forcht Bank filed a Motion for Judgment on the Pleadings. On March 16, 2015, the trial court granted Forcht Bank's Motion for Judgment on the Pleadings and dismissed Scott's complaint finding:

The plaintiff, Robert Mark Scott's, complaint is dismissed. The plaintiff's claim is barred by the statute of frauds, KRS 371.010(9) in as much as the claim is based upon Forcht Bank's alleged promise to loan Scott money. Scott has produced no writing supporting his claims and therefore the claim is barred by the statute of frauds.

Further, Scott has failed to produce any evidence that his relationship with Forcht rose to the level of Forcht owing him a fiduciary duty. Scott has failed to allege any gain or profit Forcht enjoyed from information received from Scott. The allegations made by Scott and the proof presented to the Court do not support the claim that a fiduciary relationship developed between the bank and Scott. The parties merely have a simple creditor-debtor relationship.

Scott filed a Motion to Reconsider. The trial court denied that motion. This appeal followed.

## II. STANDARD OF REVIEW

■ Kentucky's "Civil Rule 12.03 provides that any party to a lawsuit may move for a judgment on the pleadings." *City of Pioneer Village v. Bullitt Cty.*, 104 S.W.3d 757, 759 (Ky. 2003). A judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief." *Id.* "[T]he circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002). Further, CR 12.03 may be treated as a motion for summary judgment. *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 177 (Ky. 2012). We review a judgment on the pleadings *de novo. Id.*

## III. ANALYSIS

On appeal, Scott maintains that the trial court erred as a matter of law when it dismissed his claims finding they were barred by the statute of frauds. It is Scott's position that because he detrimentally relied on the alleged oral promises regarding the second loan, Forcht Bank is estopped from claiming the affirmative de-fense of statute of frauds. We disagree.

In relevant part, KRS[1] 371.010, Kentucky's Statute of Frauds statute, states as follows:

No action shall be brought to charge any person:

. . .

(9) Upon any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend, or renew credit, or make any financial accommodation to establish or assist a business enterprise or an existing business enterprise including, but not limited to the purchase of realty or real property, but this subsection shall not apply to agreements pursuant to which credit is extended by means of a credit card or similar device, or to consumer credit transactions;
unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent. It shall not be necessary to express the consideration in the writing, but it may be proved when necessary or disproved by parol or other evidence.

▆▆▆ There is no writing signed by Forcht Bank or any of its authorized agents in which Forcht Bank agreed to make a second loan to Scott. The various documents Scott points to were prepared by him. While he claims that he gave the written memorandum of his plans to Forcht Bank, there is nothing in the record to suggest that Forcht Bank signed off on the plans in writing. Scott counters that this section is not applicable because the purpose of the loan was to construct a personal residence, not to establish a business enterprise or to assist an existing one. *See Davis v. Davis*, 343 S.W.3d 610, 615 (Ky. App. 2011); *Flinn v. R.M.D. Corp.*, No. 3:11-CV-386-H, 2011 WL 5025354, at *3 (W.D. Ky. Oct. 21, 2011) ("[A] loan or extension of credit to build a personal residence would fall outside Kentucky's Statute of Frauds."). The problem with this argument, however, is that Scott's plans clearly indicate that he wanted to build the home on Lot #23 to rent out, not as a personal residence for himself. Scott's plans were certainly in the nature of a business enterprise and, therefore, fall within the statute of frauds.

Nevertheless, Scott maintains that Forcht Bank should be estopped from pleading the statute of frauds as a defense because he detrimentally relied on the oral representations and assurances that were made to him before he agreed to the terms of the first loan. Scott explains that the he would not have purchased the first lot but for Forcht Bank's reassurances that he could "absolutely" build on the second lot.

Promissory estoppel requires "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *Meade Constr. Co. v. Mansfield Commercial Elec., Inc.*, 579 S.W.2d 105, 106 (Ky. 1979)

1. Kentucky Revised Statutes.

(quoting Restatement (Second) of Contracts § 90 (1981)).

■ Regarding the application of the doctrine of estoppel as applied to the statute of frauds, a panel of this court has stated that "the doctrine of estoppel may, under the proper circumstances, prevent a party from employing the statute of frauds." *Nicholson v. Clark*, 802 S.W.2d 934, 939 (Ky. App. 1990). However, this is not to say that a claim for promissory estoppel will always bar a party from invoking a statute of frauds defense. Rather, a claim of promissory estoppel "alone is not sufficient to defeat the statute of frauds; actual fraud must be proven." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. App. 2003).

In *Sawyer v. Mills*, 295 S.W.3d 79 (Ky. 2009), Kentucky's highest court addressed the application of promissory estoppel to the statute of frauds. Specifically, the *Sawyer* court explained:

> First, it is not clear that under Kentucky law promissory estoppel can defeat the Statute of Frauds. Though the headnotes for the case state otherwise, the Court of Appeals has recently held that a claim of promissory estoppel "alone is not sufficient to defeat the statute of frauds; actual fraud must be proven." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 642 (Ky. App. 2003). As the court then noted, the claim "confuses promissory estoppel with equitable estoppel, and incorrectly interchanges the terms...." *Id.* Equitable estoppel requires a fraudulent misrepresentation as to a material fact, which has not been claimed in this case.
>
> While this Court has stated that "the statute of frauds is not a bar to a fraud or promissory estoppel claim based on an oral promise of indefinite employment," *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 471 (Ky. 1999), the statement was only dicta, as the decision turned on equitable estoppel (i.e., a claim of fraud). More recently this Court stated that it is "incorrect[ ][to] infer [ ] from *Rickert* that detrimental reliance is a bar to the statute of frauds. All that may be deduced from *Rickert* concerning the statute of frauds is that in a fraud or promissory estoppel action involving a promise of employment, it does not act as a bar." *Farmers Bank and Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 10 (Ky. 2005); *see also Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.*, 58 F.3d 1227, 1231 (7th Cir. 1995) (Posner, J.) ("[T]he statute of frauds is applicable to a promise claimed to be enforceable by virtue of the doctrine of promissory estoppel." (citing *First Nat'l Bank v. McBride*, 267 Ill. App.3d 367, 204 Ill.Dec. 676, 642 N.E.2d 138, 142 (1994); *Dickens v. Quincy College Corp.*, 245 Ill.App.3d 1055, 185 Ill. Dec. 822, 615 N.E.2d 381, 386 (1993), and relying on Illinois law)). *Willmott Hardwoods, Inc.* then went on to hold that except in the most extreme circumstances, even equitable estoppel (which involves fraud) cannot defeat the statute of frauds, "lest the Court run afoul of judicially amending the statute in violation of separation of powers." *Id.*

*Id.* at 89-90.

■ In this case, the evidence of record does not support Scott's claim that he reasonably relied on any oral promise made by Forcht Bank. Specifically, Scott has provided no evidence to support his claim that he detrimentally relied on any promises of a second loan made by Jasper or Forcht Bank. In fact, by his own statements and recollection, it would appear that when Scott and Jasper met in 2008, Jasper only assured him that he would be

able to build on Lot #23. Scott did not testify to any specific promise made by Jasper that a second loan would be made by Forcht Bank. Additionally, Scott has alleged that a writing of this supposed promise was made, but has been unable to produce any such writing. Jasper, the initial loan officer Scott met with, did not recall Scott stating that he would only accept the first loan if Forcht Bank promised to provide him with a second loan and testified that any documents would have been kept in Scott's loan file. No such written contract has ever been produced.

Moreover, the initial loan made by Forcht Bank to Scott was reduced to writing, signed by him, and contained a merger clause, which provided:

> It is further agreed, understood and acknowledged that Lender has made no oral or verbal representations or statements in order to induce Borrower's agreement hereto, that this writing along with the note of even date herewith, and including any documents required by law to be signed, constitutes the entire agreement between the parties, and that there are no side agreements or verbal understandings that are not expressly contained herein. Furthermore, this mortgage and the note of even date herewith may not be modified except by a writing signed by both parties and any such modification not reduced to writing shall not be binding upon the parties.

■ It is well settled in Kentucky that "as a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing...." *Rivermont Inn, Inc.*, 113 S.W.3d at 640-41. Here, by its terms, any oral promise would contradict the written contract agreed to and signed by Scott. As such, we cannot say

Scott reasonably relied on any alleged oral promise made by Forcht Bank to his detriment, as required to overcome the defense of the statute of frauds.

■ Scott also failed to plead any facts to suggest that a fiduciary relationship existed between him and Forcht Bank. Whether a fiduciary duty exists by virtue of the relationship between various actors is generally a question of law for the courts to decide as it essentially involves a policy determination. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992). If a fiduciary relationship does exist between the parties, the question of whether one party breached that duty is one of fact. *See Priestley v. Priestley*, 949 S.W.2d 594 (Ky. 1997).

■ Generally, banks do not owe a fiduciary duty to their customers. *See De Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817, 822 (Ky. App. 2007). Very rarely courts may impose a fiduciary duty on a bank where the bank possesses confidential information about its customer that it uses for its own gain. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5 (Ky. App. 2012). Nothing in the record supports that Forcht Bank profited from denying the second loan.

## IV. CONCLUSION

For the above stated reasons, we affirm the Laurel Circuit Court.

ALL CONCUR.