RENDERED:  SEPTEMBER 5, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1377-MR

FRANCES SCOTT REAGAN, BY
AND THROUGH HER AGENT AND
ATTORNEY-IN-FACT, ROBERT G.
REAGAN                                                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JESSICA E. GREEN, JUDGE
ACTION NO. 24-CI-000419

CAPITAL ONE FINANCIAL
CORPORATION A/K/A CAPITAL
ONE, N.A. CORPORATION                                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, EASTON, AND LAMBERT, JUDGES.

COMBS, JUDGE:  Frances Scott Reagan, by and through her agent and attorney-in-fact, Robert G. Reagan, appeals from the summary judgment of the Jefferson Circuit Court entered October 24, 2024, in favor of Capital One Financial Corporation ("Capital One" or "the bank").  The court rejected as a matter of law

Reagan's claim that the bank violated provisions of Kentucky's version of the Uniform Durable Power of Attorney Act, KRS[1] Chapter 457, ("the Act") by refusing to accept the instrument she executed appointing Robert Reagan as her attorney-in-fact. On her behalf, Robert Reagan contends that the circuit court erred by: treating her motion for judgment on the pleadings as a motion for summary judgment; by failing to treat Capital One's ultimate decision to accept the instrument as an admission that it had initially violated provisions of the Act; and by concluding that Capital One's request for information to be used to confirm Robert Reagan's identity did not violate Kentucky law. After our review, we affirm.

Frances Reagan, a resident of Louisville, appointed her grandsons, Scott Reagan and Robert Reagan (or either of them acting alone), as her agents in an instrument dated September 20, 2021. They were authorized thereby to perform in her name "all that I might individually do," specifically including the power to "establish, continue, modify, or terminate an account or other banking arrangement with a financial institution."

On May 1, 2023, Robert Reagan corresponded with Capital One. Reagan indicated that he was enclosing a copy of the durable power of attorney ("POA") executed by Frances Reagan, who held a credit card account with Capital

_____

[1] Kentucky Revised Statutes.

One. He did not request information or attempt to transact business on his principal's behalf in this letter. Instead, he advised Capital One that its relationship with him was governed by provisions of KRS 457.200 requiring the bank to "accept the POA or request certification or an opinion of counsel within seven (7) days of presentation." He advised Capital One that if it refused the POA, the bank would be liable for both his attorney's fees and for costs incurred as a result of its refusal. Reagan assured Capital One that he would "pursue both if Capital One ignores Kentucky law and forces me to spend additional time and resources on this matter."

On May 15, 2023, Capital One corresponded with Frances Reagan. The bank indicated that it had reviewed a "request to add a (POA/Conservator or guardian.)" It observed that the request could not be considered because the date of birth and social security number (or tax ID) of her attorney-in-fact had not been provided. The bank indicated that it also required a legible copy of the attorney-in-fact's valid, government-issued photo ID to verify his identity. The bank noted that it was available by telephone (twenty-four hours a day, seven days a week) to answer any question with respect to the correspondence.

Robert Reagan responded with correspondence dated August 25, 2023. In his letter, Reagan observed that Capital One "rejected my request to set up a POA over Frances Reagan's account because I did not provide a driver's

license." He enclosed a scan of his New York driver's license; another copy of the instrument appointing him as agent; and a copy of his correspondence of May 1. Again, he advised Capital One that its relationship with him was governed by provisions of KRS 457.200 and warned the bank that if it "continues to ignore Kentucky law and forces me to spend additional time and resources," he would pursue a civil action to recover attorney's fees and costs. The scan of Reagan's driver's license was darkly shaded across his photograph, and the text was rendered illegible in places. Neither the validity of the driver's license nor the agent's identity was immediately apparent.

On September 22, 2023, Capital One corresponded again with Frances Reagan. The bank indicated that her request to add an agent to her account could not be considered because the attorney-in-fact's photo ID was either not provided or was illegible. The bank reiterated that it also required either a social security number or a tax ID number to identify the agent.

Robert Reagan responded on October 19, 2023, advising that under Kentucky law, Capital One "cannot respond that it is unable to take action on a power of attorney." He indicated that the bank must instead "accept the power of attorney or request a 'certification, a translation, or an opinion of counsel under KRS 457.190(4) no later than seven (7) business days after presentation of the power of attorney for acceptance.'" Reagan concluded that by requesting his date

of birth, social security number, and a copy of a valid, government-issued identification card, Capital One "is attempting to modify the form of the power of attorney in contravention of Kentucky State law."

On October 31, 2023, Capital One corresponded with Frances Reagan in care of Robert Reagan. Once again, it requested a legible copy of Robert Reagan's valid, government-issued photo ID and either his social security or a tax ID number.

Acting as attorney-in-fact for Frances Scott Reagan, on January 18, 2024, Robert filed a civil action against Capital One. She (through Robert) alleged that the bank violated provisions of KRS 457.200 by refusing to accept the power of attorney instrument and by requiring Robert Reagan to provide additional information concerning his identity. She sought to recover attorney's fees, costs, and Robert Reagan's "expenses, lost time, fees, and other damages" incurred as a result of Capital One's actions.

Capital One filed a timely answer and asserted its affirmative defenses. The bank expressly denied that it: refused to accept the tendered power of attorney; required production of an additional or different form of power of attorney; or violated the provisions of KRS 457.200. The bank contended that it had acted in good faith in conformity with applicable law.

On March 11, 2024, Frances Reagan filed a motion for judgment on the pleadings. Capital One filed its response on April 4, 2024. The bank insisted that through its correspondence, it had merely attempted to confirm the identity of the person purporting to act as her agent. It observed that its "prudence in protecting its customer's financial information has now ironically resulted in Plaintiff -- who is purportedly acting for Ms. Reagan and in her best interest -- suing Capital One rather than simply providing basic details to confirm his identity."

On June 4, 2024, the circuit court expressed its intention to consider matters that Reagan had presented -- which were outside the pleadings -- and to treat the motion as one for summary judgment. The court concluded that in light of this change, it was compelled to give Capital One a reasonable opportunity to present affidavits. It gave Capital One twenty-one days to submit a response to the motion for summary judgment and Reagan an additional fourteen days to submit a reply to Capital One's response. It is worth noting that a review of the pleadings indicates that Robert Reagan would not have been entitled to judgment on the basis he argued.

Capital One filed a timely response; a cross-motion for summary judgment; and the affidavit of Kory Gedin, a compliance director for the bank. Gedin outlined the nature of Frances Reagan's credit card account and specific

banking regulations governing its duty to identify its customers. Gedin explained that in order to comply with the requirements of federal banking regulations aimed at preventing money laundering, human trafficking, and terrorism, Capital One had established a written policy requiring an account holder's agent to provide specific identification data before he could be added to his principal's account. This information included: name; date of birth; address; and a social security or tax ID number. Furthermore, the policy required verification of the agent's identity though documentary sources, such as a valid driver's license. Reagan filed a timely response, and Capital One replied.

By order entered October 24, 2024, the Jefferson Circuit Court granted summary judgment in favor of the bank. The court concluded that Capital One was entitled to judgment as a matter of law because federal regulations enacted pursuant to provisions of the Bank Secrecy Act (as amended by provisions of the Patriot Act) required the bank to collect identifying information with respect to its customers -- including individuals to be added to an existing account. This identifying information specifically included the customer's name, address, date of birth, and social security number or tax ID number and required verification through a government-issued photo ID. The circuit court concluded that the issue of whether Capital One's demand for identifying information was inconsistent with provisions of Kentucky's durable power of attorney act was irrelevant where the

state act specifically deferred to "any other law applicable to financial institutions." This appeal followed.

On appeal, Reagan argues that the circuit court erred by treating the motion for judgment on the pleadings as one for summary judgment and by entertaining Capital One's motion for summary judgment. We disagree.

The Kentucky Rules of Civil Procedure ("CR") provide that any party to a legal action may move for judgment on the pleadings. CR 12.03. A judgment on the pleadings "should be granted if it appears beyond doubt that the nonmoving party cannot prove any set of facts that would entitle him/her to relief." *City of Pioneer Village v. Bullitt Cnty.*, 104 S.W.3d 757, 759 (Ky. 2003). "[T]he circuit court is not required to make any factual determination; rather, the question is purely a matter of law." *James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002). A motion filed pursuant to the provisions of CR 12.03 may be treated as a motion for summary judgment. *Schultz v. Gen. Elec. Healthcare Fin. Servs., Inc.*, 360 S.W.3d 171, 177 (Ky. 2012).

Next, Reagan argues that the circuit court erred by granting summary judgment in favor of Capital One. We review *de novo* the trial court's conclusion that a party is entitled to judgment as a matter of law. *Scott v. Forcht Bank, NA*, 521 S.W.3d 591, 594 (Ky. App. 2017).

In 2018, our legislature enacted the first comprehensive set of laws related to powers of attorney in KRS Chapter 457, also known as the Uniform Power of Attorney Act (2006). *Wiley v. Masonic Homes of Kentucky, Inc.*, 694 S.W.3d 322, 325 (Ky. 2024). The legislation was drafted by the Uniform Law Commission in 2006, and was adopted, in part, as follows:

(1) Except as otherwise provided in subsection (2) of this section:

    (a) A person shall either accept an acknowledged power of attorney or request a certification, a translation, or an opinion of counsel under KRS 457.190(4) no later than seven (7) business days after presentation of the power of attorney for acceptance;

    (b) If a person requests a certification, a translation, or an opinion of counsel under KRS 457.190(4), the person shall accept the power of attorney no later than five (5) business days after receipt of the certification, translation, or opinion of counsel; and

    (c) A person may not require an additional or different form of power of attorney for authority granted in the power of attorney presented.

(2) A person is not required to accept an acknowledged power of attorney if:

    (a) The person is not otherwise required to engage in a transaction with the principal in the same circumstances;

(b) Engaging in a transaction with the agent or the principal in the same circumstances would be inconsistent with federal law;

(c) The person has actual knowledge of the termination of the agent's authority or of the power of attorney before exercise of the power;

(d) A request for a certification, a translation, or an opinion of counsel under KRS 457.190(4) [is] refused;

(e) The person in good faith believes that the power is not valid or that the agent does not have the authority to perform the act requested, whether or not a certification, a translation, or an opinion of counsel under KRS 457.190(4) has been requested or provided; or

(f) The person makes, or has actual knowledge that another person has made, a report to the Cabinet for Health and Family Services stating a good faith belief that the principal may be subject to physical or financial abuse, neglect, exploitation, or abandonment by the agent or a person acting for or with the agent.

(3) A person that refuses in violation of this section to accept an acknowledged power of attorney is subject to:

(a) A court order mandating acceptance of the power of attorney; and

(b) Liability for reasonable attorney's fees and costs incurred in any action or proceeding that confirms the validity of the power of attorney or mandates acceptance of the power of attorney.

(4) A person that accepts a power of attorney pursuant to this section shall not be liable for his or her good faith reliance on the agent's representation of the scope of authority granted to the agent by the power of attorney. In addition, the person shall not be responsible to determine or ensure the proper application of funds or property by the agent.

KRS 457.200.

Capital One's request for identifying information did not equate with an unqualified refusal to honor the power of attorney presented by Robert Reagan. The bank did not question the validity of the power of attorney -- nor the scope of authority granted by the instrument. The request for identifying information was not an attempt to modify the form of the power of attorney as alleged by Reagan. Nevertheless, we agree with the trial court that it is unnecessary to decide this issue because KRS 457.220 specifically provides that the Act does not supersede any other law applicable to financial institutions, and that where the provisions conflict, the other law controls.

As it drafted its model act governing the use of power of attorney instruments, the National Conference of Commissioners on Uniform State Laws was well aware that financial institutions are heavily regulated by a myriad of federal provisions. For instance, in an effort to combat money laundering and the financing of terrorism, the Bank Secrecy Act, 31 United States Code ("U.S.C.") § 5318, as amended by the USA PATRIOT Act, Pub.L. No. 107–56, 115 Stat. 272

-11-

(2001), requires banks to establish comprehensive anti-money laundering programs. Section 5318(h)(2) authorizes the Secretary of Treasury to adopt regulations prescribing the minimum requirements of these programs. As part of its anti-money laundering system, federal regulations require banks to have a robust Customer Identification Program (CIP). 31 Code of Federal Regulations ("C.F.R.") § 1020.220. *At a minimum*, the bank must have written policies and procedures in place to verify the identities of its customers. *Id.* The regulations require that banks *always know with whom they are dealing.*

To conform to the applicable regulations, Capital One devised and implemented a written CIP that included risk-based procedures sufficient for the bank to "form a reasonable belief that it knows the true identity of each customer." 31 C.F.R. § 1020.220(a)(1), (2). Before opening an account, the bank's policy requires it to collect the prospective customer's name, address, and taxpayer identification number. 31 C.F.R. § 1020.220(a). Moreover, within a reasonable time after the account is opened, the bank must use that information to verify the customer's identity though a process aimed at evaluating the accuracy of the data provided -- through inspection of a valid, government-issued ID, for instance. *Id.*

The bank's obligation to know its customer does not end at the initial contact. A re-verification process is required where certain unusual activity on the customer's account "triggers" it. Charged with enforcing provisions of the Bank

Secrecy Act, the Federal Deposit Insurance Corporation specifically requires financial institutions to assess new potential risks where a new party is added to a customer's account. *Risk Management Manual of Examination Policies* 8.1-7. Basic information (including name, address, date of birth, social security, or tax ID number) must again be collected and verified to identify the new party with whom the bank now has a relationship. *Id.*

Reagan misunderstands Capital One's interest in obtaining the identifying the information that it sought. The bank was not concerned with possible liability stemming from its acceptance of the power-of-attorney instrument. Instead, it sought to collect information sufficient to "form a reasonable belief that it kn[ew] the true identity of each customer" pursuant to federal provisions governing business undertaken by financial institutions. Provisions of Kentucky's Uniform Power of Attorney Act notwithstanding, Capital One was clearly required by **federal provisions** to collect the identifying information that it requested.

In support of his contention that Capital One was not required to collect the information it requested, Reagan observes that Wells Fargo did not require him to produce his social security number or driver's license. We simply note that while banks are permitted to rely on the results of another financial institution's information collection, they are certainly not required to do so. While

-13-

Wells Fargo was free to rely on information collected by another financial institution, Capital One was not obligated to accept the impression of Wells Fargo that it knew its customer.

Finally, we address Reagan's argument with respect to Capital One's ultimate decision -- mid-litigation -- not to require him to produce his social security number after all. Reagan characterizes this decision as an admission that Bank One initially violated the provisions of our Uniform Power of Attorney Act. However, this argument is flawed. We can safely surmise that the bank's decision was premised on the fact that by that point in the litigation, Capital One was satisfied that it knew the true identity of its customer -- or that perhaps his social security number was not relevant for purposes of the litigation.

We affirm the judgment of the Jefferson Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Bixler W. Howland
Louisville, Kentucky

BRIEF FOR APPELLEE:

Reid S. Manley
Birmingham, Alabama