RENDERED:  JANUARY 16, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0824-MR

SARAH E. WHITIS                                                    APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 24-CI-00972

U.S. BANK NATIONAL
ASSOCIATION AND MARY ROSE
FRENCH                                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, L. JONES, AND McNEILL, JUDGES.

L. JONES, JUDGE:  Sarah E. Whitis (Whitis) appeals the May 27, 2024 Order of

the Fayette Circuit Court dismissing her complaint, with prejudice, against

Appellees U.S. Bank National Association (Bank) and Mary Rose French (French)

(collectively Appellees). We affirm.

On March 11, 2024, Whitis filed a complaint in Fayette Circuit Court against U.S. Bank and French, with her complaint making the following factual allegations which we set out verbatim:

## FACTUAL BACKGROUND

5) Whitis was a client/customer of Bank where she had various deposit accounts and promissory notes. One of her notes was a home equity line of credit, hereafter referred to as a HELOC.

6) In 2021, Whitis was evaluating revising terms of her HELOC given the belief that interest rates were increasing in coming months and wished to lock in a lower rate. She was referred to Chandler Wolfe, an employee/agent of Bank. They met and Ms. Wolfe explained to Whitis that her present HELOC had an interest rate cap of 4.25% which would not increase for 10 years with a monthly payment of no more than $1,000 per month. Wolfe was incorrect in what she told Whitis.

7) In April/May 2022, Whitis, per the advice of Wolfe, decided to pursue an increase in the line of credit with the same HELOC terms which Whitis had been told by Wolfe had an interest rate of 4.25%.

8) On May 2, 2022, Whitis met with French of the Bank's Wealth Management division to close the new HELOC. Whitis had read the terms of the HELOC and read that it had an 18% interest rate cap for the life of the loan but that she could not find the "cap" rate as described by Ms. Wolfe. Whitis told French she wanted to know what the exact cap rate was before she would close on the new HELOC.

9) French explained the three-day grace or recission period. Then she told Whitis that she was not seeing the cap either, that she would look it up, do some research and if it was

different than the 4.25%, she would let Whitis know before the end of the grace period. Prior to the grace period ending, French contacted Whitis on other issues, but never mentioned the cap, whether it was 4.25% or 18%.

10)    Whitis relied upon French's promise that if the cap on the interest note was higher than 4.25%, she would contact Whitis before the grace period expired to let her know. French never told Whitis before the grace period ended that the maximum interest rate was 18%.

11)    After the grace period had expired French informed Whitis on May 25, 2022, that the cap on the interest rate was 18% and not 4.25%.

12)    Bank, after a series of meetings with Whitis, refused to correct or modify the HELOC to reflect the cap on the interest rate that both Wolfe and French had assured Whitis was contained in the promissory note.

13)    At all times herein both French and Wolfe were acting as employees and agents of the bank and had authority to make the statements and assurances they made.

Record (R.) at 4-5.

Whitis's complaint claimed that both French and Bank were liable for: (1) negligent misrepresentation; (2) fraud by omission; (3) fraudulent misrepresentation; and (4) breach of fiduciary duty. Whitis also claimed that Bank was liable for negligent training and supervision of both Wolfe and French. Whitis requested compensatory and punitive damages.

On April 26, 2024, Appellees filed a motion to dismiss, claiming that, as a matter of law, Whitis's complaint fails because she read the terms of the

HELOC before signing and cannot claim to have relied upon oral statements contrary to the written terms. Moreover, Appellees claimed Whitis's breach of fiduciary duty claim fails as they did not owe any fiduciary duty to her, and Whitis's negligent training and supervision claim fails because Whitis did not allege any harmful propensities of Wolfe or French nor any identifiable actionable underlying wrong committed by either. Attached to the Appellees' motion to dismiss were three exhibits: (1) a July 3, 2018 HELOC agreement between Bank and Whitis; (2) the May 2, 2022 HELOC agreement between Whitis and Bank (signed by French on behalf of Bank); and (3) a Notice of Final Agreement signed by Whitis and French on May 2, 2022 stating, in all capital letters that the parties agreed:

> BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

On May 17, 2024, the trial court heard argument on Appelleess' motion to dismiss. Relying on the "written papers," which the trial court noted that Whitis had read, the trial court granted Appellees' motion, making oral findings on

the record that the HELOC was not vague and that Whitis could not rely on any additional oral statements to support her claims. On May 27, 2024, the trial court entered a written order prepared by Appellees' counsel dismissing Whitis's complaint, noting that the trial court had "reviewed the parties' briefs, considered the arguments and the applicable law[.]" R. at 124. On May 30, 2024, Whitis filed a motion to vacate the trial court's order dismissing her complaint, which was denied on June 27, 2024. This appeal followed.

On appeal, Whitis claims the trial court erred in granting the Appellees' motion to dismiss, arguing that she properly alleged facts to satisfy each of her claims. It is difficult to discern from her brief, but Whitis also appears to argue that the trial court should have treated the motion to dismiss as one for summary judgment (which likewise should have been denied) because the trial court considered materials that Appellees attached to their motion that were not integral to the complaint.

Before we turn to the parties' arguments, we must address the deficiencies in Whitis's brief, as the consequences of those deficiencies affect our review of those arguments. Rule of Appellate Procedure (RAP) 32(3) requires that a brief contain "[a] statement of the case consisting of a summary of the facts and procedural events relevant and necessary to an understanding of the issues

presented by the appeal, with ample references to the specific location in the record supporting each of the statements contained in the summary."

Moreover, RAP 32(4) provides:

> An argument conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner.

Whitis's Statement of the Case contains absolutely no references to the record below. Moreover, the body of her argument contains just *one* citation to the circuit court record, the video record of the May 17, 2024 argument on Appellees' motion to dismiss. The *only* reference at all to the written record in Whitis's opening brief is in the appendix, noting the location of the May 28, 2024 order dismissing her complaint and the June 27, 2024 order denying her motion to alter, amend, or vacate.

This Court has recognized that a reply brief "may be used to both supplement an appellant's original brief and to correct a procedural defect[.]" *Hollingsworth v. Hollingsworth*, 798 S.W. 2d 145, 147 (Ky. App. 1990). In her reply brief, Whitis partially acknowledges her lack of citations to the record deficiency, claiming that:

> [Appellees] raised an issue that Whitis had not identified in her brief where certain items were located in the Case

History record. The only item which should be noted was the location of the complaint. First, a copy of the complaint was attached to the Prehearing Statement. The complaint is located in the Circuit Court Record on page 3.

Appellant's Reply Brief at 2.

Including her reply brief, the most generous examination of Whitis's briefs would count a mere four citations to the record below. Such paucity of citations can hardly be considered "ample." Indeed, while there is no specific number of citations that are required, we note that under RAP 32(3) and RAP 32(4) the "requirement [is that] such citation[s] *permeate* both the Statement of the Case and the Argument." *Clark v. Workman*, 604 S.W.3d 616, 619 (Ky. App. 2020) (emphasis added).

The requirement for citations, particularly pinpoint citations to the record is not a pedantic mandate. "Without pinpoint citations to the record, a court must sift through a record to [find] the basis for a claim for relief." *Commonwealth v. Roth*, 567 S.W.3d 591, 595 (Ky. 2019) (internal quotation marks and citations omitted). Moreover, the "rules requiring pinpoint citation to the record ensure that [an appellate court] base[s] [its] decisions upon [its] own review of the record to establish the basis for factual assertions." *Id.*

Whitis's brief contains numerous references to the numerical paragraphs of her complaint, but that is not sufficient; our appellate rules require

pinpoint citations to the *record*. Furthermore, Whitis is incorrect when she claims in her reply brief that "[t]he only item which should be noted is the location of the complaint." Reply Brief at 2. Because she claims that the trial court erred by granting the Appellees' motion to dismiss, Whitis should also note that motion's location in the record.[1] Moreover, Whitis appears to complain about the trial court's consideration of the May 2, 2025 HELOC attached to the Appellees' motion to dismiss; Whitis should likewise have indicated where in the record that attachment could be located.[2]

Far worse, Whitis's brief lacks *any* preservation statement indicating that her issues on appeal are preserved and in what manner they were preserved as required by RAP 32(4). As noted in *Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023):

> [t]he purpose of the preservation statement rule is to assure the reviewing court that the issue was properly presented to the trial court, and therefore, is appropriate for . . . consideration. While this procedural rule preserves judicial resources, it also serves an important substantive purpose: the fact and manner of preservation generally

---

[1] For example, Whitis notes in her opening brief that "Throughout their memorandum to the circuit court, Bank titles Whitis's statements as allegations or claims." Appellant's Brief at 10. However, Whitis never indicates *where* in the record that memorandum may be found, nor where in that memorandum such language is found.

[2] Again, as example, Whitis argues, "[The Appellees] argued to the circuit court that [they] could attach Whitis's HELOC as an exhibit for the court to consider. Upon attaching the HELOC to the motion, the court has to determine whether these documents converted the motion to dismiss to a motion for summary judgment." Appellant's Brief at 10-11. Again, Whitis fails to indicate *where* in the record the Appellees made such argument nor where the attached HELOC can be found.

determines the applicable standard of review. Furthermore, it is neither the function nor the responsibility [of an appellate court] to scour the record to ensure an issue has been properly preserved for appellate review.

(Internal quotation marks and citations omitted). "Our Supreme Court has 'strictly mandated compliance' with the preservation statement requirements in briefs 'since its inception under the prior Kentucky Rules of Civil Procedure.'" *W.I.S. v. K.M.B.*, 722 S.W.3d 569, 576 (Ky. App. 2025) (finality Nov. 3, 2025) (quoting *Gasaway*, 671 S.W. 3d at 310).

Moreover, *each* argument should have its own statement of preservation.[3] Whitis's brief is structured so that her "Argument" appears as a subsection of her Statement of the Case, designated by Roman numeral "IV" with nine proceeding Roman numerals addressing her arguments. At first glance, it would appear she has made perhaps ten arguments, each of which would require its own statement of preservation. However, in examining her brief, she really makes two arguments: (1) that the trial court erred in granting the Appellees' motion to dismiss as she had properly pled each of her claims and (2) the trial court should have treated the motion to dismiss as one for summary judgment because the trial

---

[3] *See e.g. Snyder v. Snyder*, No. 2024-CA-1301-ME, 2025 WL 2176842, at \*1 (Ky. App. Aug. 1, 2025) ("In essence, if an appellant raises five arguments on appeal, his opening brief should contain five preservation statements, or otherwise apprise the Court of when and how those five arguments were raised before the trial court.").

court considered the HELOC, which was attached to the motion to dismiss and not integral to the complaint. However, each of those arguments would require its own preservation statement.[4]

Whitis's brief thus does not comply with the requirements of the RAP. Our appellate courts have shown leniency to such noncompliance when a party is *pro se*[5] or when the underlying record is not voluminous.[6] However, our attempts to exercise discretion to address cases on their merits while ignoring deficiencies in adherence to our briefing rules appears to have led to parties, even those represented by experienced counsel, frequently to ignore those rules.

This Court has often lamented parties' failure to comply with our briefing rules.[7] We have stretched the limits of leniency when counsel has failed to

---

[4] While Whitis made some attempt to correct her lack of citations to the record in her reply brief, she does not make any attempt to do the same regarding her lack of preservation statements.

[5] *See, e.g.*, *Jones v. Boegh*, No. 2023-CA-1196-MR, 2025 WL 568544, at *3 (Ky. App. Feb. 21, 2025) (choosing to overlook an appellant's failure to provide citations to the record and failure to include statements of preservation because of his *pro se* status and proceeding to decide the case on its merits).

[6] *See, e.g.*, *Jennings v. Kentucky One Health*, No. 2022-CA-0912-MR, 2023 WL 3767440, at *2 (Ky. App. Jun 2, 2023) (choosing to overlook failure to include references to the record and failure to include a statement of preservation in appeal prosecuted by a party represented by counsel because the appellate court could readily determine preservation, and the record was not voluminous).

[7] *See, e.g.*, *Decker Services, LLC v. Pritchard*, No. 2023-CA-0596-MR, 2024 WL 4094548, at *4 (Ky. App. Sep. 6, 2024):

> We have been ever increasingly awash in deficient briefs in recent years. Nearly four years ago we lamented the "ongoing problem of noncompliant briefing[.]" *Bewley v. Heady*, 610 S.W.3d 352, 355

-10-

follow the RAP because naturally the consequences fall on their clients. But focus on the offending attorneys' clients is unfair to others. Such leniency "is unfair to the clients of opposing counsel and counsel themselves who are competent and do abide by our rules." *J.P.T. v. Cabinet for Health and Fam. Servs.*, 689 S.W.3d 149, 152 (Ky. App. 2024). Moreover, being over-lenient to violations of the RAP sends a mixed message to newer members of the bar that non-compliance with RAP has no (or at least inconsistent) consequences, thus perpetuating the cycle. *See id.*

> n.1 (Ky. App. 2020). Citing statistics taken from our opinions, we lamented that "[t]he prodigious number of attorneys appearing in Kentucky's appellate courts lacking the skill, will, or interest in following procedural rules is growing." *Clark*, 604 S.W.3d at 616-17. The problem has unfortunately increased in frequency and severity.
>
> As even a rudimentary search of our rendered opinions in the past few years would sadly show, we have attempted ***many*** times to point out briefing deficiencies while leniently declining to impose sanctions. Our hope, lamentably in vain, was that we would prod the appellate bar into complying with the mandatory briefing rules without imposing sanctions whose brunt would mainly be felt by clients. Unfortunately, our dire warnings have been unsuccessful. Thus, as we recently emphasized, "our reluctance to sanction should come to an end[.]" *J.P.T. v. Cabinet for Health and Family Services*, 689 S.W.3d 149, 153 (Ky. App. 2024).
>
> The takeaway for the appellate bar is this: absent compelling and unusual circumstances, we are inclined going forward to impose sanctions, as set forth in RAP 10(B), for the submission of a substantially noncompliant brief. The bar must comply with RAP. Immediately.

(Footnotes and emphasis omitted.)

RAP 10(B) authorizes several *non-exclusive* consequences when a party fails to substantially comply with our appellate rules. That rule provides:

> [T]he failure of a party to substantially comply with the rules is grounds for such action as the appellate court deems appropriate, which *may* include
>
> (1) A deficiency notice or order directing a party to take specific action,
>
> (2) A show cause order,
>
> (3) Striking of filings, briefs, record or portions thereof,
>
> (4) Imposition of fines on counsel for failing to comply with these rules of not more than $1,000,
>
> (5) A dismissal of the appeal or denial of the motion for discretionary review, and
>
> (6) Such further remedies as are specified in any applicable rule.

(Emphasis added.)

In addition to those enumerated sanctions, "[i]f a party fails to inform the appellate court of where in the record [her] issue is preserved, the appellate court can treat that issue as unpreserved." *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021). In that instance, we have discretion to review only for manifest injustice. *Id.*

-12-

In looking at the appropriate sanction, we note that there are three objectives in imposing sanctions, (1) "[A]chieving an orderly appellate process," (2) "deciding cases on the merits," and (3) "seeing to it that litigants do not needlessly suffer the loss of their constitutional right to appeal." *Crossley v. Anheuser-Busch, Inc.*, 747 S.W.2d 600, 601 (Ky. 1988) (quoting *Ready v. Jamison*, 705 S.W.2d 479, 482 (Ky. 1986)). To that end, an appellate court "must attempt to balance the harm caused against the objectives sought to be promoted to arrive at an appropriate sanction." *Crossley*, 747 S.W.2d at 601.

In considering the harms and objectives outlined above, we believe neither dismissal of this appeal nor striking Whitis's briefs would be the correct sanction. While not dispositive of the matter, we first note the Appellees have not requested such a sanction. Moreover, striking her briefs and dismissing her appeal would act to deprive her of any review on the merits of her claims.

Instead, we will treat Whitis's claims as unpreserved and review only for manifest injustice. Such sanction acknowledges the level of deficiency of Whitis's briefs (the most egregious being the lack of any preservation statement) while also still providing Whitis with a review of her claims on their merits, albeit at a standard far more deferential to the trial court.

Ordinarily, we review a trial court's determination of a motion to dismiss under CR 12.02(f) *de novo*. *See Littleton v. Plybon*, 395 S.W.3d 505, 507

(Ky. App. 2012). Even if we found Appellees' motion to dismiss should have been treated as one for summary judgment due the trial court considering the attachment to that motion, our review as to summary judgment would likewise be *de novo*. *See Id.* at 507 n.3. Instead, we are reviewing for manifest injustice, which is found if an "error seriously affected the 'fairness, integrity, or public reputation of the proceeding.'" *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1,4 (Ky. 2006)). Manifest injustice is present if there "is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin*, 203 S.W.3d at 3.

In reviewing for manifest injustice, we find none. The essence of Whitis's claims is that she was induced to sign the May 2, 2022 HELOC on French's promise that she would contact Whitis within the three-day grace period if French discovered that the interest rate cap was actually higher than 4.25%. Whitis's first and third claims, negligent misrepresentation and fraudulent misrepresentation, have a common element – reasonable reliance.[8]

---

[8] Count I of Whitis's complaint was for negligent misrepresentation. The elements of negligent misrepresentation are:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Reliance on a purported misrepresentation is not enough for either tort; instead, such reliance must be reasonable or justifiable. *See Flegles, Inc. v. TruServ Corp.*, 289 S.W3d 544, 549 (Ky. 2009). Courts will "generally give no relief to a complaining party where means of knowledge of the truth or falsity of the representations are at [her] hands. [She] will be presumed to have had knowledge." *Mayo Arcade Corp. v. Bonded Floors, Co.*, 41 S.W.2d 1104, 1108 (Ky. 1931).

Simply looking at the complaint, this is not a case where a wholly naïve party binds herself to a contract that she has been induced to sign quickly before having read the terms herself, thus leaving her without recourse based on favorable representations that do not appear in the contract by someone who has gained her confidence. Paragraph 8 of Whitis's complaint makes clear that she not only read the HELOC but could ascertain that it had an 18% interest cap. R. at 4. Paragraphs 5 and 6 of Whitis's complaint demonstrate that she is familiar enough with banking and finance to understand the terms of a HELOC and to evaluate

---

*Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580 (Ky. 2004) (emphasis added) (adopting RESTATEMENT (SECOND) OF TORTS § 552 (AM. L. INST. 1977)).

Count III of the complaint was for fraudulent misrepresentation. The elements of fraudulent misrepresentation are: "(1) the defendant made a material representation to the plaintiff; (2) the representation was false; (3) the defendant knew the representation to be false or made it with reckless disregard for its truth or falsity; (4) the defendant intended to induce the plaintiff to act upon the misrepresentation; (5) the plaintiff *reasonably relied* upon the misrepresentation; and (6) the misrepresentation caused injury to the plaintiff." *Giddings & Lewis, Inc. v. Industrial Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011) (emphasis added) (citations omitted).

whether to "lock in" a lower interest rate. R. at 4. Paragraph 9 of Whitis's complaint indicates that she knew she had three days to rescind the May 2, 2022 HELOC but did not, even though she and French spoke during that period and Whitis had the opportunity to follow up on the interest rate. R. at 4-5. The Complaint fails to allege that French continued to mislead or assert that the interest rate was 4.25% during those further conversations.

Assuming for the sake of argument that French attempted to mislead Whitis into signing the HELOC on the representation that the interest rate was 4.25%, Whitis saw for herself that such representation was untrue; had several days to rescind; and failed to inquire about the interest rate during further communications within the rescission period. Thus, Whitis's claims for negligent misrepresentation and fraudulent misrepresentation fail for lack of reasonable reliance on French's alleged statements regarding the HELOC's interest rate.

Count II of Whitis's complaint was for fraud by omission. The flaw in this claim is that Whitis did not establish a failure to disclose a material fact at issue.[9]

---

[9] The elements of fraud by omission are: "(1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Giddings & Lewis*, 348 S.W. 3d at 747 (citation omitted).

Paragraphs 21 through 23 set forth Whitis's allegations as to failure to disclose. She alleged, to wit:

> 21) French explained the grace period and that if Whitis signed the HELOC documents now, she assured Whitis she would let her know what the cap rate was before the grace period expired so she could rescind the HELOC if the rate was above 4.25%
>
> 22) French's promise to provide the interest rate cap created a duty to disclose this information to Whitis before the grace period expired.
>
> 23) French did not disclose to Whitis before the grace period expired that the rate cap was 18%.

R. at 6. The flaw in Whitis's claim is that the interest rate cap *was* disclosed in the very HELOC documents she admitted to reading in Paragraph 8 of her complaint. Thus, Whitis's claim for fraud by omission fails as there was no omission of HELOC's interest rate.

Count V alleges breach of fiduciary duty. The flaw in this claim is that Whitis failed to establish the existence of a fiduciary duty.[10] To establish that claim, Whitis alleged in her complaint, to wit:

> 37) Whitis told French she could not find or locate the interest rate cap in the HELOC and needed her to find it for her.

---

[10] The elements of breach of fiduciary duty are "[(1)] the existence of a fiduciary duty; [(2)] a breach of that duty; [(3)] and that the breach caused injury to the party to whom the duty was owed." *Seeger Enter., Inc. v. Town & Country Bank and Tr. Co.*, 518 S.W.3d 791, 795 (Ky. App. 2017) (citation omitted).

-17-

38) French agreed to find it and inform Whitis what the interest rate cap was before the grace period expired.

39) When French agreed to inform Whitis of the interest rate cap before the grace period expired, it created a duty in equity and good conscience to act in good faith in notifying Whitis.

40) This created a fiduciary duty owed to Whitis.

41) Whitis was damaged by French's breach of fiduciary duty.

R. at 9.

"Whether a fiduciary duty exists by virtue of the relationship between various actors is generally a question of law for the courts to decide as it essentially involves a policy determination." *Scott v. Forcht Bank, NA*, 521 S.W.3d 591, 597 (Ky. App. 2017). In explaining whether banks owe fiduciary duties to their customers, this Court in *Seeger* explained:

> A fiduciary duty is "the highest order of duty imposed by law." *Abbott v. Chesley*, 413 S.W.3d 589, 600 (Ky. 2013) (citation omitted). Such a duty "requires more than the generalized business obligation of good faith and fair dealing." *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 242 (Ky. 2013). In fact, it has been held that "the relationship between a bank and a borrower does not ordinarily impose a fiduciary duty upon the bank." *In re Sallee v. Fort Knox Nat'l Bank N.A.*, 286 F.3d 878, 884 (6th Cir. 2002); *see also Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). Rather, this relationship is one of creditor-debtor only. *Sallee* at 893. Only when a bank profits at the expense of its borrower has such a duty been held to exist. *See Snow Pallet*, 367 S.W.3d 1 (Ky. App. 2012)

and *de Jong v. Leitchfield Deposit Bank*, 254 S.W.3d 817 (Ky. App. 2007).

518 S.W.3d at 795-96.

The relationship between Whitis and French (as well as Bank) are of ordinary customer and banker. A fiduciary relationship would not be found in these circumstances, as opposed to ones where a bank misused confidential information from its customer. *See Snow Pallet, Inc.*, 376 S.W. 3d at 4-5 (describing published cases where Kentucky courts found the existence of a fiduciary relationship between a customer and a bank). Because Whitis's claims do not establish the existence of a fiduciary relationship, her claim for breach of fiduciary relationship fails.

Finally, Count IV of Whitis's complaint alleges that Bank negligently trained and supervised Wolfe and French.[11] While the tort of negligent supervision

---

[11] The elements of negligence in management and supervision require that the defendant, be:

> negligent or reckless:
>
> > (a) in giving improper or ambiguous orders or in failing to make proper regulations; or
> >
> > (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; or
> >
> > (c) in the supervision of the activity; or
> >
> > (d) in permitting, or failing to prevent negligent or other tortious conduct by persons whether or not his servants

and training is not technically derivative of any tortious acts by employees because the negligent supervision and training actions "focus on the direct negligence of the employer which permitted an otherwise avoidable circumstance to occur[,]" *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009), the key is that the plaintiff must still show a *wrongful act* on the part of the *employee.* As has been established, *supra*, all of Whitis's claims regarding wrongful acts by employees of Bank fail. Thus, Whitis's claim of negligent training and supervision equally fails.

The trial court's May 27, 2024 order granting the Appellees' motion to dismiss did not result in manifest injustice to Whitis. And we review only for manifest injustice because of Whitis's noncompliance with the RAP, particularly her failure to include any preservation statements. Our Rules of Appellate Procedure exist for a reason, and failure to abide by them carries consequences.

We review any remaining contentions of error as moot, unpersuasive, unpreserved, or without merit.

Thus, for the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

---

or agents, upon premises or with instrumentalities under his control.

*Smith v. Isaacs*, 777 S.W.2d 912, 914 (Ky. 1989) (quoting RESTATEMENT (SECOND) OF AGENCY § 213 (AM. L. INST. 1958)).

ALL CONCUR.

BRIEFS FOR APPELLANT:

Richard M. Rawdon
Georgetown, Kentucky

BRIEF FOR APPELLEES:

Chadwick A. McTighe
Zachary D. Losey
Louisville, Kentucky